## KNIGHT v. PAXTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Submitted January 4, 1888. — Decided February 6, 1888.

An ante-nuptial settlement was excuted prior to 1867, by which J. M. conveyed to his brother T. M., land in Illinois, in trust for his intended wife, for her life, and in case of her death leaving a child or children, to such child or children, and in case of her death without a child, then to S. M. and O. L. for life, with remainder to J. M. and his heirs. In May, 1867, J. M., S. M., and O. L. joined in conveying the premises to the wife for the purpose of determining the trust and vesting their respective rights under the settlement in her absolutely. In 1872 J. M. and the wife joined in a trust deed of the premises, in the nature of a mortgage, to secure the payment of a debt of the husband. The trust deed purported to be acknowledged by the husband and wife; but after foreclosure and sale, the husband and wife, being in possession of the premises, set up as against the purchaser, that the wife had never acknowledged it, and that by reason thereof she had never parted with the homestead right in the premises secured to her by the law of Illinois. The purchaser filed this bill in equity, to have the wife's homestead right set off to her on a division, or, if the property was incapable of division, to have it discharged of it on the payment into court of $1000. *Held:*

(1) That, without deciding the effect of the birth of a child, after the deed of May, 1867, as a restraint upon the alienation of the fee, the trust deed of 1872, under the Illinois statute of March 27, 1869, respecting deeds of *femes covert*, operated to convey the life estate of the wife to the grantee, and that no acknowledgment was necessary to its validity.

(2) That, the master having reported that the property could not be divided, the complainant was entitled to the possession of the whole premises, under the laws of Illinois, upon payment into court of $1000.

BILL in EQUITY. The case is stated in the opinion of the court.

*Mr. George L. Paddock* for appellant.

*Mr. L. H. Boutell* for appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

This suit was brought by James W. Paxton, the complainant below, in the Circuit Court of the United States for the

Northern District of Illinois, to obtain a decree that so much of certain described real property, situated in Chicago, as was of the value of one thousand dollars, be set off to the defendants for their homestead, and that the possession of the residue be delivered to him; or, if the premises could not be divided, that the possession of the whole be delivered to him on his paying into court for the use of the defendants the sum of one thousand dollars. The facts, as set forth in the bill, are in substance as follows: On the 13th of February, 1872, James M. Marshall, of Chicago, being indebted to the complainant in the sum of $10,000, executed and delivered to one Francis Bradley his bond of that date, in the penal sum of $20,000, conditioned to pay the amount of that indebtedness on the 13th of February, 1877, with semiannual interest; and also ten coupon notes, each for $450, payable to the order of the said Francis Bradley. The bond and coupon notes were on the same day assigned to the complainant, and Marshall and his wife at once executed a deed of the real property mentioned to one Lyman Baird, in trust for the security of the principal and interest of the bond and the coupon notes, and subject to a condition of defeasance on their payment according to their terms, and the performance of the covenants mentioned therein. This deed purported to be acknowledged by Marshall and his wife, and was on the following day recorded in the recorder's office of the county. Default having been made in the payment of the principal sum, the trustee, Baird, at the request of the complainant, and by virtue of the power contained in the trust deed, on the 8th of March, 1879, sold the premises and the title and equity of redemption of the grantors therein, for the sum of $10,000, to the complainant, he being the highest bidder therefor. A deed thereof was executed to him by the trustee. Immediately afterwards he demanded possession of the premises from Marshall and his wife, who were, when the trust deed was executed, in the occupation of the premises as a residence. But they refused to surrender them, and about a year afterwards set up that Susan Marshall, the wife, had never acknowledged the deed of trust, and by reason of this fact her homestead right in the

premises had never been released. The bill alleged that this was the first knowledge the complainant ever had of any such claim, and that he always believed the trust deed was properly acknowledged by both Marshall and his wife, and that thereby they had released all their right in the premises under the homestead laws of Illinois.

The bill also alleged that the value of the premises was greatly in excess of the value of the homestead rights therein, and that the complainant was entitled to the possession of so much thereof as might not be set off to the defendants for a homestead, or, in case the premises were incapable of division, he was entitled to the whole of them on payment into court of the sum of one thousand dollars for the use of the defendants, which payment he offered to make. The bill concluded with a prayer for a decree in accordance with these averments, as stated above, and for such other and further relief as the nature of the case might require.

Soon after the bill was filed, James M. Marshall died, and his widow filed a separate answer, setting up four defences : *first*, that the premises in question were conveyed on the 21st of November, 1860, by James M. Marshall, prior to her marriage with him, and in consideration thereof, to his brother, Thomas E. Marshall, in trust, as an ante-nuptial settlement, and therefore she was incapable of executing the trust deed of February 13, 1872 ; *second*, that at the time this latter deed was signed she was confined to her bed by sickness, and by reason thereof, and the effect of narcotics prescribed by her physician to relieve her pain, she had not sufficient mental capacity to read and understand it ; *third*, that when she signed it, her husband falsely stated to her that it related to other property which was situated in a different part of the city of Chicago ; and, *fourth*, that after the bond secured by that deed became due, the time for payment was extended by the complainant in consideration of a rate of interest greater than that originally stipulated.

Of these objections, the first is the only one which requires consideration by this court. The other three are not sustained by the evidence in the case. That which bears upon them is

vague and conflicting, seldom engendering a doubt, and never producing conviction.

The deed of trust constituting the ante-nuptial settlement was executed by James M. Marshall to his brother, Thomas E. Marshall, in trust for the appellant, Susan C. Larmon, whom he was about to marry, for her life, and in case of her death, leaving any child or children of the intended marriage, for such child or children, and in case she died without child or children, then for Susan C. Marshall and Ophelia K. Larmon for life, with remainder to James M. Marshall and his heirs.

On the 18th of May, 1867, Thomas E. Marshall, the trustee named in the deed of marriage settlement, and the said Susan C. Marshall and Ophelia K. Larmon, conveyed the premises to the wife, for the purpose, as stated in the deed, of determining the trust, and vesting in her absolutely all rights, legal or equitable, which they might have under the deed of marriage settlement. James M. Marshall, the husband, witnessed this deed, and at the time there were no children born to her. This deed was properly acknowledged by all the grantors, and recorded soon afterwards in the recorder's office of the county. In it all parties then living, interested in the property, or who could by any possibility become interested, united, except James M. Marshall, the husband, who was a witness to its execution. Whether there could afterwards be any restraint upon her alienation of the fee of the property by reason of the subsequent birth of a child or children of the marriage, it is unnecessary to decide. There was none upon the alienation of the life estate when the trust deed in the nature of a mortgage was executed to the complainant in February, 1872. Was she bound by that deed, assuming, as found by the court, that she never acknowledged its execution before the officer whose certificate of acknowledgment it bore? This question, we think, is answered by the statutes of Illinois. Previous to March 27, 1869, an acknowledgment by a married woman before a qualified officer was essential to the valid execution of her conveyance of real property. But on that date an act was passed, the first section of which is as follows: Ill. Sess. Laws of 1869, 359.

" Any *feme covert* being above the age of eighteen years, joining with her husband in the execution of any deed, mortgage, conveyance, power of attorney, or other writing of or relating to the sale, conveyance, or other disposition of lands or real estate as aforesaid, shall be bound and concluded by the same, in respect to her right, title, claim, interest, or dower in such estate, as if she were sole and of full age as aforesaid; and the acknowledgment or proof of such deed, mortgage, conveyance, power of attorney, or other writing may be the same, as if she were sole."

After the passage of this act the execution of a conveyance of real property by a married woman joining with her husband was sufficiently authenticated by her signature. It would seem that her acknowledgment of its execution before an officer authorized to take acknowledgments was only required to render it admissible as evidence without further proof, or to release her homestead right in the property. For its validity as a transfer of the grantor's interest, except as to the homestead rights therein, the acknowledgment was unnecessary.

In *Hogan* v. *Hogan*, 89 Illinois, 427, the Supreme Court of Illinois had occasion to speak both of the statute contained in the revision of 1845 and of that of 1869. Of the statute in the revision of 1845 it said:

" Under said statute it was only in the precise mode prescribed thereby, by the husband joining in the execution of the deed, and by a certificate showing an acknowledgment in substantial compliance with the statutory requirements, that the wife could convey her real estate. It was the acknowledgment of the *feme covert* which was the operative act to pass the title, and not the delivery of the deed."

And of the statute of 1869 it said:

" This latter statutory enactment worked a marked change in the law. Thereafter the acknowledgment ceased to be the effective means to work the transfer of title. The certificate of her acknowledgment might thenceforth have been the same as that required in the case of a *feme sole ;* and without any acknowledgment whatever, proof of her execution of a conveyance might have been made as at common law. So also,

from that time forth, her contract in writing, made jointly with her husband, for the disposition of her lands, became binding upon her, and might have been enforced in a court of chancery, and she compelled to a specific performance of the same. One only distinction between her condition and that of an unmarried woman, in reference to the alienation or disposition of real property, was still retained. The law still required, before she could convey or make any valid contract for the disposition of her lands, her husband should join with her in the deed or other writing." See, also, *Bradshaw* v. *Atkins*, 110 Illinois, 323, 329 ; *Edwards* v. *Shoeneman*, 104 Illinois, 278.

It follows that by the trust deed of 1872 in the nature of a mortgage to the complainant, in which her husband united, her estate in the mortgaged premises passed as completely as if she had been a *feme sole*, subject to any homestead right therein which they possessed under the laws of Illinois. An act of the State, passed in 1851, provided for exemption from levy and forced sale, under judicial process or order, for debts contracted after its date, of the lot of ground and buildings thereon, occupied as a residence and owned by the debtor, being a householder and having a family, to the value of one thousand dollars. And the amendatory act of 1857 provided that no release or waiver of such exemption should be valid unless the same should be in writing, subscribed by the holder and his wife if he had one, " and acknowledged in the same manner as conveyances of real property are required to be acknowledged ; " the act declaring that its object was " to require in all cases the signature and acknowledgment of the wife as conditions to the alienation of the homestead." An act passed in 1871 provided that in the enforcement of a lien upon premises including the homestead, if the homestead right was not waived or released in the manner required, the court might set off the homestead and decree the sale of the balance of the premises, or, if the value thereof exceeded the exemption, and they could not be divided, might order the sale of the whole and the payment of the amount of the exemption to the party entitled. 1 Starr & Curtis's Annotated Statutes of Illinois, c.

52. The payment by the holder of the lien, seeking its enforcement by sale of the premises, of the amount of the homestead exemption, would of course obviate the necessity of the sale in the case mentioned, where the property was incapable of division, and authorize a decree for the delivery of the entire property to the party otherwise entitled to it. The master, to whom it was referred to ascertain whether the premises could be divided so as to set off to the widow a portion equivalent to the sum of $1000, having reported that they could not be divided, the complainant was entitled to the possession of the whole premises upon paying the required amount into court for her benefit. The decree of the Circuit Court is, therefore,

*Affirmed.*