THE WOODCLIFF LAND IMPROVEMENT COMPANY ET AL., PROSECUTORS, v. THE NEW JERSEY SHORE LINE RAILROAD COMPANY.

Argued June 13, 1904—Decided February 27, 1905.

1. A right in land lying between high and low water marks, conveyed by the state by grant to any person, becomes, by statute, the private property of the grantee named in the grant. The state is the owner of all land upon its navigable streams lying between high and low water marks; the title of a party receiving such a grant is as absolute as the words of the grant import.

2. Such interest as a grantee or lessee acquires under such a grant or lease from the state is private property, and subject to condemnation under the state's power of eminent domain.

3. A defective description in a condemnation proceeding may be amended under the statute, and an order appointing commissioners to condemn lands will not be set aside on *certiorari* because of an alleged defective description until the moving party in the condemnation has had opportunity to apply to amend and has failed to do so.

On *certiorari.*

Before Justices FORT and PITNEY.

For the prosecutors, *Abel I. Smith & Mabon.*

For the defendant, *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

FORT, J. This writ brings up an order of a justice of the Supreme Court appointing commissioners to condemn lands for railroad purposes. The land described in the application is partly upland and partly under the tidewaters of the Hudson river. So much as is under water is between the shore line or high-water mark and the exterior line for solid filling, as fixed, pursuant to law, by the riparian commissioners of the state. The prosecutor is the assignee of a lease for the land in front of its lands, lying under water and within the

exterior line of solid filling, which lease was originally made by the state to one John Meeks, on December 21st, 1869. The state is therefore the owner of said lands under water, subject to said lease and the prosecutor's rights thereunder, which can only be determined by a reference to the terms of the lease itself, which is not printed in the record.

Any right in lands lying between high and low water marks conveyed by the state by grant to any person, becomes, under the statutes of 1869 and 1891, the private property of the grantee named in the grant. The state is the absolute owner of all lands upon the navigable streams lying between high and low water marks, and if it conveys the state's rights to a private party the title of such party is as absolute as the words of the grant import. *Pamph. L.* 1869, *p.* 1017; *Gen. Stat., p.* 2788; *Stevens* v. *Paterson Railroad Co.,* 5 *Vroom* 532; *Hoboken Land and Improvement Co.* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 656; *Pamph. L.* 1871, *p.* 113; *Gen. Stat., p.* 2796; *Pamph. L.* 1891, *p.* 213, §§ 3, 4; *Gen. Stat., p.* 2794; *Clark* v. *City of Providence,* 16 *R. I.* 337.

If by the terms of a lease or grant made by the state the interest conveyed to the grantee is less than a fee, then such interest as is taken is taken as absolutely as the lease or grant imports and the statutes under which it was made authorize.

This condition existing under such a lease or grant by the state, we think that such interests as the lessee or grantee possesses are the subject of condemnation under the state's power of eminent domain, when exercised either by the state or by a corporation having the power to condemn lands for public purposes.

It is contended by the prosecutor that lands upon a navigable river, which lie between high and low water marks, cannot be condemned by a railroad company for a railway right of way longitudinally with the river. As to lands lying under the navigable part of the waters of the river, we think this is true. As to such lands it is questionable if the power of condemnation does exist. By the General Railroad act of 1903, the use of such lands is limited to the right to use the

land under water for certain overhead river crossings or for tunnels only. *Pamph. L.* 1903*, p.* 655, § 16.

It is questionable if the state has the power to grant in fee, as against the people of the state, the lands under the navigable part of the waters of the rivers of the state, if such grant would affect the right of free navigation. As to such lands the state is said to be a trustee for all the people. *Illinois Central Railroad Co.* v. *Illinois,* 146 *U. S.* 387, 452, 453.

But there would seem to be no reason for applying that rule to the lands under the non-navigable part of the waters of the rivers of the state. To so apply it would be to overthrow all our riparian acts, and the titles to all the filled·lands abutting on the navigable waters, and lands authorized to be filled between high and low water marks, and also those lying between the shore line and the exterior line for solid filling, as authorized by statute and fixed by the riparian commissioners. The right of the state in and its right to sell in fee the lands of the state lying under water, between high and low water marks, and under the non-navigable waters upon the shore line of any river, is settled by the decision of the highest court of this state and the United States. *Stevens* v. *Paterson Railroad Co., supra; Hoboken Land and Improvement Co.* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 556.

Conceding this right as to lands under the non-navigable waters, and that a grant by the state may convey the fee, and that private ownership may be held in such lands, it seems impossible, upon any principle, to say that such lands so held may not be condemned by public corporations having the state's right of eminent domain to condemn lands for its public purposes. I am unable to distinguish as between the right to condemn this class of private lands and any other land held by grant or lease. 10 *Am. & Eng. Encycl. L.* (2d ed.) 1088; *Mowry* v. *City of Providence,* 16 *R. I.* 442.

The General Railroad act of 1903 gives power to any railroad company to "take by condemnation any of the land and property required for the right of way of its main line and branches not exceeding one hundred feet in width," &c.

*Pamph. L.* 1903, *p.* 652, § 13. Under this power, we think that lands held by private owners under a grant from the state of lands under water, between high and low water marks, and within the exterior lines for solid filling as fixed by authority of law, are not a part of the bed of the river under the navigable waters thereof, and may be condemned for railroad purposes. *Trimble* v. *Supreme Court,* 72 *Pac. Rep.* 89.

Another objection is that the description in the application for the commissioners in this case is defective. We think this objection is well taken. A description should be so definite that the landowner may, from reading the same and a comparison thereof with monuments or other land marks upon the ground and therein referred to, tell the location of the land which it is proposed to take. He should not be required to seek other maps and data to be able to ascertain and locate the land proposed to be condemned.

But there is ample power of amendment in this regard, under the statute, upon proper application (*Pamph. L.* 1900, *p.* 86, § 17), and the proceeding will not be set aside for this reason until the party applying for the condemnation shall have had opportunity to make the necessary application therefor. The defendant may have thirty days in which to apply to a justice of the Supreme Court to amend, and upon default to so do an order may be entered setting aside the order appointing commissioners, otherwise it will be affirmed, without costs to either party.