THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY *et al.*

*Filed at Ottawa January 22, 1885.*

1. EMINENT DOMAIN—*acquiring right of way by one railway company across the track of another.* The sixth clause of section 19 of the general Railroad law of 1872, confers power upon any railroad corporation formed under that act, to cross, intersect, etc., any other railway before constructed, at any point in its route, and upon the grounds of such other railway company; and provides that if the two corporations can not agree upon the amount of compensation to be made therefor, or the points and manner of such crossings, etc., the same shall be ascertained and determined in the manner provided by law,—which means by a proceeding under the Eminent Domain act.

2. The fact that a railway company has acquired a strip of land thirty feet wide across another railway company's right of way, for a crossing, upon which to lay two tracks, at the expense of the former, by mutual agreement and for a consideration agreed upon, will not preclude the former from obtaining, under the Eminent Domain act, an additional right of way of twenty feet across the latter company's road when rendered necessary by the increased business of the former road, where there is no restriction of such right in the agreement; and it matters not that such increased business is brought about by its contracts of connection with other railroad companies.

3. Where a right of one railway company to cross another company's road by two tracks has been acquired by purchase, and limited to a right of way thirty feet wide, and it does not appear that the relinquishment for the future of any right of further application for additional facilities of crossing in any way entered into the amount of compensation which was arranged, and the right to lay additional tracks across the same road is sought by condemnation, the company seeking to condemn will not be required to surrender its rights acquired by the purchase in order that it may have the condemnation sought, and have compensation assessed for the four tracks in that proceeding.

4. It matters not that the necessity for an increase of the right of way for additional tracks of a railway company is caused by the use of its road by other companies acting under its lease or by contract, nor does it matter by what corporation or corporations its road is actually operated. It is still a public use, and in such case the need of the lessees is that of the lessor company, and the lessees may proceed to condemn in the name of the lessor, when the public necessity so requires.

5. Where a railway company has acquired, by agreement, the right to lay two railroad tracks across a railroad previously constructed, and it seeks to

condemn, under the Eminent Domain act, an additional strip on which to construct two other of its tracks across the same road, the fact that it will produce an obstruction and an inconvenience to the company whose road is sought to be crossed is no reason for enjoining the proceeding to condemn, as all the damages caused thereby, when ascertained, will have to be paid, and it will be presumed they will be fully awarded.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. CHARLES M. OSBORN, for the appellant:

The petitioner had the right to select its own route, and the place and manner of crossing other roads, and to determine the necessity for its acquiring any particular property. *Railroad Co.* v. *Town of Lake,* 71 Ill. 333; *Railroad Co.* v. *Railroad Co.* 97 id. 500.

One railway company may condemn a crossing over another, notwithstanding it may cause damage or inconvenience to the prior occupant. *Railway Co.* v. *Railway Co.* 108 Ill. 265.

I believe it to be impossible to distinguish between those cases in which it is sought to take a tract of land or make a crossing of another road in the original construction of a road, and where it is desired to obtain additional property or obtain additional crossings rendered necessary by the increased business of the road. *Railroad Co.* v. *Wilson,* 17 Ill. 123; *Low* v. *Railroad Co.* 18 id. 324; *Railroad Co.* v. *Railroad Co.* 36 Conn. 196.

The fact that additional crossings are made necessary by increase of business by making running arrangements with other companies, or by leasing, makes no difference to the exercise of the right to further condemn. *Railroad Co.* v. *Dunbar,* 100 Ill. 137; *Chicago* v. *Railroad Co.* 105 id. 73; *Smith* v. *Railroad Co.* id. 511; *Kip* v. *Railroad Co.* 13 N. Y. 224; 67 N. Y. (Hun,) 227.

A lease for one hundred years does not change the relation of the lessor to the State, and does not vest in the lessee

company the power to exercise the eminent domain, but such power remains with the lessor company.    *Mayer* v. *Railroad Co.* 109 Mass. 115.

The petitioner, by acquiring a partial right of way by contract, is not estopped from condemning a further one, and never did surrender its rights under the Eminent Domain act.

The State is not capable of permanently abandoning, or surrendering, or granting away, the exercise of the right of eminent domain.    Cooley's Const. Lim. (4th ed.) 343, 281, 282, 652, 653, 525 ; *Railroad Co.* v. *Railway Co.* 2 Gray, 1 ; *Piscataqua Bridge* v. *New Hampshire Bridge,* 7 N. H. 69 ; *Backus* v. *Lebanon,* 11 id. 20 ; *Railroad Co.* v. *Railroad Co.* 111 Mass. 125.

Taking of property under this right is not an exhaustion of the right in respect to that property.    *Railroad Co.* v. *Railroad Co.* 36 Conn. 196 ; *Railroad Co.* v. *Kip,* 67 N. Y. 227 ; 47 id. 546 ; 6 Hun, 26.

Mr. W. C. GOUDY, for the appellees, filed a lengthy and exhaustive argument as to the facts, and rights of the respective parties, and the public.

Mr. JUSTICE SHELDON delivered the opinion of the Court :

This was a bill in equity, brought by the Illinois Central Railroad Company, the Chicago and Northwestern Railway Company, and the Michigan Central Railroad Company, against the Chicago and Western Indiana Railroad Company and the Chicago, Burlington and Quincy Railroad Company, praying for an injunction to restrain the Chicago and Western Indiana Railroad Company from proceeding with a petition which it had theretofore filed in the county court of Cook county, to condemn a right of way over and across the St. Charles Air Line railroad, twenty feet in width.    Upon hearing, on answer and proofs taken, the circuit court decreed in favor of the

complainants, granting the prayer of the bill, and the Chicago and Western Indiana Railway Company appeals from the decree.

The piece of railroad known as the St. Charles Air Line railroad is half a mile in length, and extends from the Illinois Central railroad tracks on the lake front to the south branch of the Chicago river, just north of and parallel with Sixteenth street, in the city of Chicago.    It is not a part of a main line of road, and its principal business is to transfer cars between the roads of its different owners.    It was constructed prior to 1865, under some grant from the State, and by the special act of 1865 (see 2 Private Laws 1865, p. 171,) the present owners, being the complainants, and the Chicago, Burlington and Quincy Railroad Company, were authorized to maintain and operate it.    The Chicago and Western Indiana Railroad Company was organized under the general Railroad law of 1872.    The 6th clause of section 19 of that law confers power upon any corporation formed thereunder, to cross, intersect, join and unite its railway with any other railway before constructed, at any point in its route, and upon the grounds of such other railway company, with the necessary turn-outs, sidings, switches and other conveniences in furtherance of the object of its connection, and provides that every corporation whose railway is or shall be intersected by any new railway, shall unite with the corporation owning such new railway in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations can not agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in the manner prescribed by law.    This court has decided that the manner provided by law is a proceeding under the Eminent Domain act, as also that the corporation seeking the right of way, when the parties can not agree, may select the place and manner of the proposed crossing, and the character and conditions of

the use sought.   *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana Railroad Co.* 97 Ill. 506; *East St. Louis Connecting Ry. Co.* v. *East St. Louis Union Ry. Co.* 108 id. 265.

The decree recites that a contract mentioned in the bill was made between the parties, concerning the use by the Chicago and Western Indiana Railroad Company of a strip of ground thirty feet in width, across the right of way of the St. Charles Air Line railroad, and the building of two tracks across the same, as set out in the bill, and that the condemnation proceeding in question was subsequently commenced to obtain a strip of land twenty feet wide, across the St. Charles Air Line railroad, and it was therefore decreed that the Chicago and Western Indiana Railroad Company be enjoined from proceeding with its petition for condemnation.   The decree seems to be rested upon that contract, and it is that contract which is mainly relied on for the support of the decree.   The contract is in writing, of date March 11, 1880, and purports to be made between the Chicago, Burlington and Quincy Railroad Company, the Michigan Central Railroad Company, the Chicago and Northwestern Railway Company, and the Illinois Central Railroad Company, parties of the first part, and the Chicago and Western Indiana Railroad Company, party of the second part, and is executed by each of the companies, except the Michigan Central Railroad Company.   Thereby the parties of the first part agree to grant to the party of the second part the right to use, for nine hundred and ninety-nine years, a strip of land thirty feet wide across the right of way of the St. Charles Air Line railroad, for the purpose of constructing thereon two tracks for the use of the party of the second part,—in consideration of which grant the party of the second part agrees to pay the sum of $3000.   And as a further consideration, the party of the second part agrees to put in, at its own expense, and to the satisfaction of the parties of the first part, the crossing-frogs

and necessary crossing-gates, with suitable targets, signal lights, and all necessary appurtenances, and to maintain the same to the satisfaction of the parties of the first part, at its own expense; also, to furnish and pay the wages of the necessary watchmen to attend said crossing-gates. The contract further provided that the right of way it granted should be used only for the construction of two tracks and crossings thereon, by the party of the second part, and that the grant should become absolutely void and at an end on any other use being made of said strip of land thirty feet wide, by the party of the second part. The party of the first part reserved the right to lay a third track on their right of way when in their judgment it should become necessary, in which event the party of the second part agreed to put in and maintain, at its own expense, the necessary frogs for such third track. The contract, by its terms, is confined solely to the strip of thirty feet in width which it grants. It provides explicitly enough that within that thirty feet there shall never be constructed more than two tracks by the party of the second part, but as to the construction of any tracks outside of the thirty feet there is no restriction whatever.

If appellant, when it located its road so as to cross the St. Charles Air Line railroad, had been unable to agree with the owners of the latter railroad upon the points and manner of crossing and connection, then, it is conceded, a petition might have been filed in the proper court, under the Eminent Domain act, to ascertain the compensation to be made for the crossing. But it is said that here the parties were able to and did agree; that by the express language of the statute, duties are imposed upon both corporations; that mutual action is required, and that in the nature of things the crossing could not be constructed without joint, mutual coöperation; that all was here arranged by agreement,—the compensation, the point and manner of making a crossing, the connections and maintenance of such crossing, the number of tracks, etc.,—

11—113 Ill.

and it is contended that this agreement was a complete and final disposition of the entire question of the crossing for all future time; that it was only in the absence of the ability to make the agreement that authority was conferred to condemn under the Eminent Domain statute, and that, having made such an agreement, the power to condemn did not exist. The having acquired property by a railroad company, for its use, by the exercise of the right of eminent domain, does not preclude the company from obtaining, through the exercise of such right, additional property, rendered necessary by the increased business of the road. It is a continuing power, which may be exercised from time to time, as the needs of the company may require. (*Chicago, Burlington and Quincy Railroad Co.* v. *Wilson,* 17 Ill. 123; *Low* v. *Galena and Chicago Union Railroad Co.* 18 id. 324. And see *N. Y., H. and N. Railroad Co.* v. *B. H. and E. Railroad Co.* 36 Conn. 196.) And the same, we regard, must be true with respect to a crossing of another railroad which had before been acquired, and where such original acquisition had been, as in this case, by agreement. Mr. Jeffery, the superintendent of the St. Charles Air Line and Illinois Central companies, and for whom he negotiated the agreement, says that it would not have been made if it had been known that other accommodations would be required. But this we understand to be but an expression of his opinion on the subject. He does say that it was stated during the negotiations that the two tracks were all that would ever be asked for, and that if such statement had not been made, they would have made no contract. But there is in the testimony direct denial of the making of such statement, and we can not, from all the evidence, find that it was made.

We perceive nothing in the agreement, or in the written correspondence in evidence which led to the making of the agreement, or in anything else, to restrict the appellant ever after to the two tracks specified in the contract, or to afford support for the notion that no further crossing facilities would

ever afterward be asked for, in case the road's increase of business should require them. The agreement was entered into, doubtless, in view, by both sides, of the present and probable future wants of the Chicago and Western Indiana company, and with the supposition that the two tracks provided would be sufficient therefor, without anticipation by either party of the large increase of business which has come upon that company's road. When the agreement was made (March 11, 1880,) for the crossing by two tracks on a strip thirty feet wide, the Chicago and Western Indiana Railroad Company had contracts with the Chicago and Eastern Illinois Railroad Company, and the Wabash, St. Louis and Pacific Railroad Company, by which said two companies entered the city of Chicago over the tracks of the Chicago and Western Indiana railroad. Afterwards, in the summer and fall of 1880, the Chicago and Western Indiana Railroad Company made similar contracts with the Chicago and Grand Trunk Railway Company, which is the western terminus of the Grand Trunk system of roads; with the Chicago and Atlantic Railroad Company, which is the western terminus of the Erie system; and with the Louisville, New Albany and Chicago Railroad Company. Thereby it is claimed that it became necessary for the operation of appellant's railroad that it should have four tracks entirely through and beyond the city of Chicago, and that the use of a strip of land fifty feet in width is necessary for the construction of four tracks. Application was made by appellant, in November, 1880, to the superintendent, to make an agreement for permission to use a further strip, twenty feet wide, across the right of way of the St. Charles Air Line railroad, and to lay two additional tracks, making four in all. A part of the owners declined to grant the permission to lay any additional tracks. On January 31, 1881, the Chicago and Western Indiana Railroad Company filed in the county court the petition whose prosecution has been enjoined, to condemn the strip twenty feet

wide, adjoining the strip thirty feet wide, previously obtained by the agreement.

It appears that the Chicago and Western Indiana Railroad Company has a strip of land fifty feet wide, from Polk street, in the city of Chicago, for a distance of five miles south, to Forty-ninth street, in the town of Lake, so that, except this intervening strip now sought for, thirty feet in length and twenty feet in breadth, the company's right of way, fifty feet wide for the above distance, with four main tracks built upon it, is substantially complete. It appears in the case that there is a reasonable necessity for these two additional tracks, to accommodate the increased present business upon appellant's road. We find nothing in the agreement in question which should estop appellant from procuring additional accommodations when the necessity arises therefor, or which should debar the company from proceeding with its present petition for condemnation. The bill alleges that it is the intention of appellant to use the additional tracks desired, for switching and yard purposes, which would produce damages to complainants which can not be computed. But appellant, by its answer and proofs, disclaims any desire to use the tracks for such purposes. We do not see that the condemnation sought will amount to anything approaching to a destruction of the uses of the St. Charles Air Line road, but that it will produce only obstruction and inconvenience in its use. All damages which complainants will suffer thereby they are entitled to have paid to them, and we must suppose that they will be fully awarded by the jury to be sworn to assess them.

The Chicago and Western Indiana Railroad Company was incorporated under the general Railroad act now in force, and was authorized by its articles of association to build a railroad from Dalton, on the Indiana State line, to Chicago. The Chicago and Western Indiana Belt company was authorized to build tracks around Chicago, to make connections with other lines. These companies, with the South Chicago and

Western Indiana Railroad Company, have been consolidated under the name of the Chicago and Western Indiana Railroad Company. The distance of the original line was about seventeen miles. The entire line of the consolidated company, including the Belt, is fifty-two miles. It is shown that the company does not own a single passenger or freight car, or locomotive, and does not transport passengers or freight; that it is the owner of certain rights of way, railroad tracks, and ground used for warehouses and depots; that the rights and privileges to use these are leased to other railroad companies. Upon this state of facts, the point is made that as, after the crossing had been secured, running arrangements were made with the three other railroad companies mentioned, much more than doubling the amount of business to be done, to accommodate which an additional crossing is made needful, that this is not a necessity of the Chicago and Western Indiana Railroad Company which will be recognized by the law as being sufficient to place it in the condition for obtaining additional facilities under the Eminent Domain law. The general Railroad act gives express power to railroad corporations formed thereunder to make arrangements with other railroad corporations for the leasing or running their roads, or any part thereof. This right, with reference to this same company, was recognized and affirmed in *Chicago and Western Indiana Railroad Co.* v. *Dunbar,* 100 Ill. 137. In *City of Chicago* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511, where the objection was urged that the company had violated the ordinance giving it permission to enter the city, by allowing more than two roads to use its line for entrance into the city, and it was held that the ordinance compelled the company to allow the use of its line by two roads, but did not restrict it as to the number which should be admitted. The question is of the necessity for the public use of what is sought to be taken—whether it is needed for the operation of this railroad. Whether it be leased or not, or by what particular

corporation or corporations the road may be actually operated, does not affect the question. As respects this matter, the needs of the lessees are as those of the lessor company, and any condemnation for their wants may proceed in such latter company's name, and it all the while stands responsible for the running of the road. See *Kip* v. *N. Y. and H. Railroad Co.* 6 Hun, 24; S. C. 67 N. Y. 227.

It is also contended that the statutes of the State prohibit any railroad company from entering a city unless with the consent of the municipal authorities, and that by allowing other railroad companies to use its tracks, appellant has violated the policy of the law. This would not seem to be a matter about which appellees should be heard to complain, but that it should rest with the city authorities. In granting the permission to construct a railroad in a city, it is done in view of the law allowing agreements to be made with other railroad companies to run their cars into the city upon the tracks of such railroad, and the city authorities have it in their power, by their ordinance granting permission, to restrict or forbid such use, if they see fit. It would seem to be for the public benefit that different railroad companies entering into a city should concentre upon as few lines of tracks as need be. And this policy would appear to have been recognized in the case of this very road of the appellant, by the ordinance giving it permission to enter the city expressly requiring that it should allow the use of its line in the city by at least two other roads.

It is suggested that as only the nominal sum of $3000, which was no adequate compensation, was exacted and paid under the agreement in question, upon the supposition that that was final and no additional accommodation would ever be asked for, it is but equitable, if appellant would proceed for a condemnation for additional tracks, that it should surrender all rights under the agreement, and resort to the court to ascertain the entire damages for the four tracks. We do

not perceive, from the evidence, that relinquishment for the future of any right of further application for additional facilities of crossing, in any way entered into the amount of compensation which was arranged for by the agreement, and we can not recognize any equitable requirement on the part of appellant that it should surrender what it holds under the agreement, and stop the operation of its road over the thirty feet until the condemnation sought can be had.

The decree must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed.*

WALKER and SCOTT, JJ., dissenting.

Mr. JUSTICE DICKEY: I think the agreement under which appellant acquired the right of way over thirty feet for a crossing, in its substance covered the entire subject of the crossings. Under that contract appellees had a right to limit appellant to the use of two tracks, and to have these tracks confined to the thirty feet acquired under that contract. That right, in my judgment, is property, and can not be taken away without just compensation. That property, however, like other property, may be taken by condemnation. The condemnation of the additional ground sought now, I think, *necessarily* includes the taking away from appellees the rights under that contract, and calls for damages for that taking, as well as the taking of the additional ground. With that view, I think, the proceeding ought to go on.

Mr. CHIEF JUSTICE SCHOLFIELD concurs in what is said by Mr. JUSTICE DICKEY.