[No. 222. Decided January 26, 1892.]

SEATTLE & MONTANA RAILWAY COMPANY, *Appellant*, v. JOSEPH SCHEIKE AND IVAN SCHEIKE, *Respondents.*

3 625<br>631 457

EMINENT DOMAIN—APPROPRIATION OF LEASEHOLD ESTATE—MEASURE OF DAMAGES.

Where lands held under a leasehold interest are appropriated by a railroad company for right-of-way, the tenant's measure of damages is the difference between the value of the leasehold at the time of the appropriation and its diminished value due to the appropriation.

In such cases, the tenant is not entitled to damages for injuries to the land and buildings, fruit trees and other improvements thereon at the time he took possession under the lease, but is entitled to recover the value of growing crops destroyed in building the railroad, and also the value of buildings erected by him for his own use as tenant, or, in case of removal of such buildings to another portion of the premises, the costs thereof.

*Appeal from Superior Court, King County.*

The facts in this case are stated in the opinion.

*Thomas Burke (Burke, Shepard & Woods,* of counsel), for appellant.

*Dyer & Craven,* for respondents.

40—3 WASH.

The opinion of the court was delivered by

ANDERS, C. J.—This was a proceeding under the act of March 21, 1890, to appropriate a strip of land one hundred feet in width for the purpose of a right-of-way for appellant's railroad across lots one and three, in section three, township twenty-five north, range three east, in King county, and to ascertain and determine the compensation to be paid to the owners and all others interested for the taking or injury to said land.   It appears that one Patrick O'Meara was the owner of both of said lots, and that respondents were tenants of lot three under a lease for the term of five years from August 12, 1889, of which term about one year had expired at the time of the commencement of these proceedings.   The state was also a nominal party on account of its ownership of the tide lands, a small portion of which the petitioner claimed would be occupied by the right-of-way, but was not represented at the trial. Lot three lies on the shore of Puget Sound, and was used by respondents, as appears from the record, for the purpose of gardening and of raising poultry and swine.   But a small portion of the whole tract, however, was actually devoted to those purposes, and that consisted of a narrow strip between the water's edge and a high bluff on which were situated the garden, orchard, dwelling house, and various other buildings used by the respondents in the prosecution of their business.   Appellant's right-of-way crossed this portion of the premises, and it is claimed by the respondents that it includes within its limits all the buildings excepting the dwelling house, which was only partially on the right-of-way, the fences, and many fruit trees, and that the appropriation of this land by the railroad destroyed a large quantity of growing vegetables and deprived them of the use of the most valuable portion of their leasehold estate.   At the trial in the superior court, as before indi-

cated, it was sought to assess the damages resulting from the taking of the land to the owner of both lots as well as to the respondents; but although it is stated in the brief of appellant, and is doubtless true, that the jury rendered a verdict and assessed damages to O'Meara, it is not shown by the record that any answer was filed by him, or that he was represented by counsel, and it appears that the only real contest on the trial was that waged by respondents. The latter in their answer claimed damages in the sum of five thousand dollars. The jury awarded them six hundred dollars, for which judgment was entered, and from which the petitioner appealed.

No exceptions are taken to the charge of the court to the jury, and the only errors alleged relate to the ruling of the court in the reception and rejection of testimony. Most of appellant's objections are without any substantial foundation, not being supported by the record, but there is one, however, that cannot be overlooked, and which must work a reversal of the judgment. It is this: The respondents were permitted to introduce testimony as to the value of the land taken, and of the buildings which were upon it when they took possession under their lease, and of the value of fruit trees growing thereon. So far as the respondents were concerned, the question was not one of the value of the premises, for that would not necessarily determine the value of the lease, but of the value of the use of the land for their unexpired term; they had only a limited interest in the land, and were entitled to compensation only for damages to that interest. If they had been the owners, the measure of their damages would have been the difference between the market value of the land before the taking of the right-of-way and immediately afterwards, irrespective of any benefits accruing from the building of the railroad, and the same principle should be applied so far as possible in determining the compensation to which they

were entitled as tenants. In this case the respondents are entitled to be fully paid the difference in the market value of the use of the premises for the remainder of the term of their lease before the building of the railroad and the value after its construction; or, in other words, the amount of diminution in value of their lease because of the appropriation; and that may be shown by the opinion of witnesses having knowledge of such value or of the rental value of such premises in the neighborhood, and who are acquainted with the character and situation of the premises. In case no market demand for such leasehold interests can be shown, it may be necessary to receive the opinion of witnesses as to the value of this, particular lease before and after the condemnation. In addition to the damage to their leasehold estate, the respondents are entitled to recover the value of growing crops destroyed by the building of the railroad, and also the value of any buildings erected by them for their own use and benefit and which they would be entitled to remove at the expiration of their term, or the cost of removing them to another part of the premises, if so removed. Respondents will have a right to show the condition of the premises at the time they took possession under the lease, and the condition in which they had been put at the time of the taking by appellant, as such testimony would have some bearing upon the question of the value of their interest in the land, and if it shall be shown to be necessary to remove the dwelling house back from the right-of-way the cost of such removal should be paid by appellant. But it would not be competent to show the value of the work done on the premises by respondents, excepting the clearing of the land which was stipulated for in the lease as a part of the rent reserved in addition to the yearly payment of money, and which goes to make up the amount of the rent paid by respondents. It may be well to remark in this connection that in this class of cases it is difficult, if not im-

possible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case. Everything caused by the appropriation which renders the balance of the estate less useful and convenient should be considered in estimating the compensation to be paid.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.

HOYT and SCOTT, JJ., concur.

STILES, J., concurs in the result.

DUNBAR, J.—I dissent. While the defendants would not be entitled to the value of the land, or necessarily to the value of the buildings, yet I think that value would be a circumstance tending to show the value of the leasehold interest. The value of the lease can only be gathered from such testimony, and from circumstances of this kind. At least it is one way of arriving at the value.