[No. 4346.   Decided March 30, 1903.]

THE STATE OF WASHINGTON ON THE RELATION OF WIL-
LIAM PITT TRIMBLE v. SUPERIOR COURT OF KING
COUNTY.

EMINENT DOMAIN — APPROPRIATION BY RAILWAY CORPORATION — STATE
LANDS HELD UNDER CONTRACT OF SALE.

Under the power of eminent domain granted railway com-
panies by Bal. Code, §§ 4333, 4334, which authorize them to con-
demn such "land, real estate, or premises" as may be necessary
for right of way, such companies are empowered to appropriate
the equitable interest in tide lands held by purchasers from the-
state under contract of sale, subject only to the right of re-entry
and forfeiture on the part of the state for a failure to pay the
balance of the purchase price according to the terms of the
state's contract.

SAME — CONDEMNATION PROCEEDINGS — NECESSARY PARTIES.

Under Bal. Code, § 5638, which provides that notice of con-
demnation proceedings shall be served on each and every person
named in the petition as owner, incumbrancer or otherwise inter-
ested therein, and that want of service of such notice shall render
subsequent proceedings void as to the person not served, but all
persons or parties served with notice shall be bound, the failure-
to serve all interested parties would not invalidate the proceed-
ings against such as were included as parties and properly-
served with notice.

SAME — LEASE OF ROAD — EFFECT.

The fact that a railway company had leased its line of road
to another corporation and does not operate its road nor possess
any rolling stock of its own, would not deprive it of the power of
condemning private property.

*Original Application for Certiorari.*

*Struve, Allen Hughes & McMicken, Preston, Carr &
Gilman* and *George E. de Steiguer,* for relator.

*Burke, Shepard & McGilvra,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The Seattle & Montana Railroad Company
is a corporation organized under the laws of the state of
Washington for the purpose of constructing, owning, and
operating railroads and telegraph lines within the state.
As such corporation it is vested by statute with the right
to exercise the power of eminent domain.   The lands and
premises involved in this controversy are situated on the
shore of Elliott Bay, in the harbor of Seattle, and are
"tide and shore lands," bounded on the north by King
street, on the east by Oriental avenue, on the south by
Connecticut street, and on the west by Occidental avenue.
The record title to the easterly ten feet of the above-de-
scribed tract is in William Pitt Trimble, but it seems to
be conceded that that part is in fact the community prop-
erty of Trimble and wife.   The title to the remainder of
said tract is still in the state of Washington, but posses-
sion thereof is held by the Trimbles under a contract made
by the state, through its duly constituted agent, the com-
missioner of public lands, on March 10, 1897, agreeing
to convey the same by patent to one C. E. Remsberg in con-
sideration of the sum of $925.34, to be paid in ten equal
annual installments, the first at the time of the execution
of the agreement and the others annually thereafter, with
interest thereon at six per cent per annum, payable an-
nually with each installment on all unpaid installments.
This contract is in the usual form of such contracts, and
provides, among other things, that the conveyance shall
be "subject, however, to any lien or liens that may arise
or be created in consequence of, or pursuant to, the pro-
visions of an act of the legislature of the state of Wash-
ington entitled 'An act prescribing the ways in which
waterways for the uses of navigation may be exca-

vated by private contract, providing for liens upon
tide and shore lands belonging to the state, granting rights
of way across lands belonging to the state,' approved March
9, 1893"; that the vendee "will pay all taxes and assess-
ments of every kind that may be levied or assessed on said
land and premises"; that, if the said vendee "shall well
and faithfully keep and perform all the covenants and
agreements hereinbefore specified by him to be kept and
performed in the manner and at or before the times above
specified, he shall be entitled to a patent to said lands from
said state of Washington as provided by law upon the sur-
render of said agreement and cancellation of the same";
and that "the terms of this contract shall be binding in
favor of and against the said party of the second part, his
heirs, executors, administrators and assigns, but no assign-
ment of this contract shall in any way relieve the said
party of the second part from the performance of the con-
ditions hereof on his part, nor be recognized or admitted
by the state of Washington, unless the same shall be en-
dorsed hereon and executed, witnessed and acknowledged
in the same manner as a conveyance of real estate is re-
quired by law to be, and said assignment shall be accepted
by and entered on the records of the commissioner of pub-
lic lands."

The railroad company, in pursuance of the provisions
of the statute, filed a petition for condemnation in the
superior court of King county, in which it substantially
set forth the state's contract above mentioned, and annexed
a copy thereof as an exhibit, and alleged that after the mak-
ing of the said contract said Remsberg and his wife, for a
valuable consideration, made and delivered to one C. F.
Webb their warranty deed, which was duly recorded, con-
veying to her, the said Webb, all the tide lands embraced

in the said contract, and wherein and whereby said Remsberg and wife authorized the commissioner of public lands of the state of Washington, or the board of state land commissioners, or their or either of their successors in office, to make, issue, and deliver to said grantee in her name any grant, contract, or conveyance of said lands, or any part thereof, or to any person or corporation to whom said grantee might convey the same, or any part thereof; that thereafter the said C. F. Webb, for a valuable consideration, made and delivered to said William Pitt Trimble her quitclaim deed, whereby she released, remised, and quitclaimed unto him all right, title, and interest which she then had in or to said tide lands, or any part thereof, and wherein and whereby she "authorized the commissioner of public lands and the board of state land commissioners, or either of them, or their successors in office, to execute and deliver to said William Pitt Trimble any contract or conveyance of the above-described land, or any part thereof, or to any person or corporation to whom he might convey the same"; that the said Remsberg, at or soon after the time of receiving from the state its contract for the conveyance of said tide lands to him, went into possession of the same, and upon executing and delivering said warranty deed to said Webb he delivered the possession of said lands to her, and upon executing and delivering said quitclaim deed to said William Pitt Trimble she delivered the possession of said lands to him, and he has ever since remained and now is in possession thereof, claiming under said contract of the state. Counsel for the petitioners state in their brief that Remsberg and wife, as well as Trimble and wife, were joined as respondents in the condemnation proceeding, on account of the informality of these assignments, under the provisions of the contract. The petition specifically de-

scribes the lands sought to be appropriated to the use of the railroad company, as required by law, and alleges, in substance, that the use to which the land is to be devoted is a public use; that the public interest requires the prosecution of the said enterprise; and that the land, real estate, and premises sought to be appropriated are required and necessary for the purposes of such enterprise. The petition also states that the petitioner seeks to appropriate the entire fee-simple estate of the respondents Trimble in the strip of land ten feet in width which they hold by deed, and "to appropriate, condemn, and acquire the entire interest of said William Pitt Trimble and Connie Ford Trimble, his wife, in the remainder of said lots, tracts, and parcels of land, to wit, their said equitable ownership thereof, and their entire interest in said agreement with the state of Washington for the sale and conveyance thereof; and also the entire apparent interest of said C. E. Remsberg and Belle F. Remsberg, his wife, therein—all subject to the obligation imposed by the terms of said agreement upon the said C. E. Remsberg, the vendee therein named, and upon his assigns, to pay to the state of Washington the balance of the purchase price therein specified, with interest as therein required." It is further stated in the petition that the railroad company seeks to appropriate the aforesaid land and the aforesaid interests therein for the purpose of tracks and a site for terminal buildings and facilities. The petition prayed that a jury be impaneled by the court to ascertain and determine the compensation to be made in money, irrespective of any benefit from any improvement proposed by the petitioner, to the respective owners, tenants, and incumbrancers of, and other persons interested in, the said lands and the said interests therein, and in said agreement for the sale and

conveyance of a part thereof, for the taking or injuriousiy affecting the same, or, if a jury be waived, that said compensation be ascertained by the court or a judge thereof.

It thus appears that the petition set forth all facts necessary under the statute to give the superior court jurisdiction of the subject-matter of the proceeding. Remsberg and wife and Trimble and wife were duly served with notice of the application for condemnation. The first-named parties failed to appear, but Trimble and wife appeared, and thereafter a hearing was had before one of the judges of the superior court of King county for the purpose of determining whether the alleged use for which the lands and property were sought to be appropriated was really a public use, and whether the same were required and necessary for the purposes of the petitioner, as set out in said petition. On this "preliminary hearing" the fact set out in the petition, as above noted, relative to the contract by the state for the sale of the tide lands in question, and the subsequent transfers of the vendee's interest therein, were clearly established by documentary evidence; and we think the petitioner also satisfactorily proved that the premises were required and necessary for the purposes specified, namely, a right of way for its tracks and a site for a passenger station and for platforms, warehouses, etc. But it was shown by the testimony of the petitioner's engineer that the petitioner is not the owner of any locomotives or cars, and that it does not operate its railroad, but the same is operated by the Great Northern Railway Company, under some kind of an agreement between them, the terms of which were not disclosed by the evidence. It further appeared that neither the state of Washington nor the Seattle & Lake Washington Waterway Company was made a party to or served with notice of the proceeding.

The respondents Trimble and wife objected to the proceeding on the grounds (1) that the lands and premises sought to be appropriated were not subject to condemnation under the law of this state, and (2) that there was a defect of parties, and the court had no right or authority to make any order in the premises without bringing in all parties interested in the lands in controversy. The court, however, made an order declaring that the contemplated use for which the said railroad company sought to appropriate said lands was really a public use, and that the public interest required the prosecution of the enterprise mentioned in the petition and that the lands, real estate, and premises sought to be appropriated were required and necessary for the purpose of said enterprise, and that all interested parties had been served with notice, and directing the sheriff to summon a jury to assess the damages to be paid to the owner or owners respectively, and to all tenants, incumbrancers of, and others interested in, said lands, real estate, and premises, towit, the said William Pitt Trimble and Connie Ford Trimble, his wife, for the taking or injuriously affecting the same by said petitioner. The said Trimble and wife, respondents in the condemnation proceeding, thereupon sued out a writ of certiorari from this court to review the action of the superior court as to the order and rulings above mentioned. And the said relators allege that "the court erred in making and entering the order of June 19, 1902, declaring the public use and necessity of the appropriation and ordering a jury to be impaneled for the assessment of the damages of Trimble and wife."

It follows from what we have already said that the objection to the findings of the court as to the public use and necessity of the appropriation is without merit, and it must be conceded that, if the particular property sought

to be appropriated is subject to be taken by virtue of the power of eminent domain, and that the owners and other persons interested therein, within the meaning of our statute, were served with notice of the hearing of the petition for condemnation, the court committed no error in ordering the summoning of a jury to determine the resulting damages. It is provided in § 4333, Bal. Code, that "a corporation organized for the construction of any railway . . . shall have the right to enter upon any land, real estate or premises . . . between the termini thereof for the purpose of examining, locating and surveying the line of such road." And § 4334 provides that "such corporation may appropriate so much of said land, real estate or premises . . . . as may be necessary for the line of such road not exceeding two hundred feet in width: . . . and . . . sufficient quantity of such land, real estate or premises . . . in addition to that before specified in this section, for the necessary side tracks, depots and water stations, and the right to conduct water thereto by aqueduct." But this court has held that the interest of the state in tide lands cannot be taken under the power of eminent domain granted to railway corporations by the above-mentioned statute, for the reason that the law contemplates the taking of private and not public property, unless the right to take the latter is specifically conferred by law. *Seattle & Montana Ry. Co. v. State,* 7 Wash. 150 (34 Pac. 551, 22 L. R. A. 217, 38 Am. St. Rep. 866). And, such being the law in this state, the learned counsel for the relators contend that the tide lands in question are not subject to condemnation and appropriation by the railroad company, because they are still the property of the state, and the relators have no estate, either legal or equitable, therein; and they cite sev-

eral authorities holding, in effect, that in law the vendee in a mere executory contract for the sale of land obtains no real property or interest in real property; that the relations between the parties to the contract are wholly personal; that the vendee's right is a mere thing in action, and that it is only when the vendee performs, or offers to perform, all the acts necessary to entitle him to a deed, that he has an equitable title and may compel a conveyance. Pomeroy, Contracts, § 314; Warvelle, Vendors, p. 188, § 3. See, also, *Smith v. Jones,* 21 Utah, 270 (60 Pac. 1104—1106); *Ruggles v. Nantucket,* 11 Cush. 433; *Railway Co. v. Prescott,* 16 Wall. 603; *Railway Co. v. McShane,* 22 Wall. 444; *Northern Pacific R. R. Co. v. Traill County,* 115 U. S. 600-609 (6 Sup. Ct. 201). In the last three cases cited the real question for determination was whether lands granted to railroad companies by the United States were subject to taxation before all the conditions of the grant had been performed, and it was decided that they were not. But the authorities cited by counsel for the relators do not seem to us to be decisive of the question here under consideration. We have no doubt that, as between the parties to a contract for the sale and purchase of land, the vendee therein named does not become the full equitable owner until he performs or offers to perform all the acts necessary to entitle him to a conveyance of the land and to a specific performance of the contract in a court of equity; but it does not necessarily follow that a vendee in such a contract has no interest or estate whatever in the land covered by the agreement, which may not be controlled or divested by law. In fact, as we shall hereafter see, there are interests in real property, less than estates in fee simple, which may be taken for public uses by authority of the sovereign power. And,

it must be borne in mind that the respondent corporation is not seeking to appropriate the interest of the state in the tide lands described in the petition for condemnation, or the interest of any person or persons therein other than the state's vendee and the relators herein. It simply seeks, as we have already said, to appropriate, condemn, and acquire the entire interest of the relators in said tide lands, namely, their equitable ownership thereof, and their entire interest in said agreement with the state of Washington for the sale and conveyance thereof, and also the entire apparent interest of said Remsberg and wife therein, all subject to the obligation imposed by the terms of said agreement upon the vendee therein named, and his assigns, to pay to the state the balance of the purchase price therein specified, with interest as therein provided for. And the first question, therefore, to be determined is whether the interest sought to be appropriated by the respondent is fairly included in the grant to corporations organized for the construction of railways of the power of eminent domain. It is contended on behalf of the relators that it is not, for the alleged reason that the power to condemn and appropriate such interest is not conferred upon the respondent corporation either expressly or by necessary implication, and therefore cannot be exercised by it for the purpose of depriving the relators of property which is a mere chose in action, and not "land, real estate or premises" in contemplation of our statute. And if it be true, as claimed by their counsel, that the relators have no present interest in the lands described in the contract between their assignors and the state, it certainly follows that the condemnation proceeding must fail.

But we are clearly of the opinion that counsel are in error in assuming that the relators have, as between them-

selves and the railroad company, no interest in the lands in controversy, which is subject to be taken under the power of eminent domain. They are in possession, with the consent of the state, of all the tide lands described in the petition, and have the right to receive the rents, issues, and profits thereof, without interference on the part of the state except for a breach of the covenants set forth in the state's contract, and which we have no right to presume will be broken. Indeed, it is stated in the brief of the relators that "he [Mr. Trimble] has the right, under the contract pleaded, to make payment for this land during the period of ten years, in accordance with the terms of the agreement. He has the absolutely vested right to the possession of this land under the law, to enjoy its use, rents, issues, and profits during this period unmolested by the law of eminent domain." It is true that the relators have a vested right to the possession and use of this land, as stated by counsel, but we think it is not true that such vested right may not be molested "by the law of eminent domain." The interest of the relators is, to say the least, an interest in land, and as such may be taken for a public use by condemnation, upon payment of just compensation therefor. It is an interest that may be sold for taxes (*State v. Frost,* 25 Wash. 134, 64 Pac. 902), and which may be assigned, transferred, and disposed of by the relators; and the state cannot deprive them of this right. *Washington Iron Works Co. v. King County,* 20 Wash. 150 (54 Pac. 1004).

"The term 'land,' in statutes conferring power to condemn, is taken in its legal sense, and includes both the soil and buildings and other structures on it, and any and all interests therein. An easement may be taken under authority to take land." 1 Lewis, Eminent Domain (2d ed.) § 285.

In *People ex rel. Heyneman v. Blake,* 19 Cal. 579, the court held (FIELD, C. J., delivering the opinion) that the right to condemn private lands under the water company act of 1858, in accordance with the railroad act of 1853, included the right to condemn any estate or interest in the land necessary for the purposes of the company, and that the company might, therefore, seek in its petition for condemnation only the right of excavating a tunnel through the land, and of running pipes through the tunnel to convey its water, without seeking to obtain a title to the land. In *In re Metropolitan El. Ry. Co.,* 2 N. Y. Supp. 278, which was a condemnation proceeding, the property sought to be acquired by the railway company was described generally as "so much of the privilege, easement, or other interest in said street as is taken, appropriated, or interfered with by the construction and maintenance of the elevated railroad of the petitioner belonging to or claimed by . . . , and appurtenant to the lots and premises known as . . . , and bounded and described as follows." And the supreme court of New York there ruled that the term "real estate," as used in the statutes granting the right of condemnation to the petitioner, "covers all the incorporeal hereditaments, easements, rights, and privileges which it is sought to acquire in these various proceedings." In *Story v. New York El. R. R. Co.,* 90 N. Y. 122 (43 Am. Rep. 146), it was decided, in effect, that the right of access to an improved lot abutting on a street and the right to have light and air pass to a building thereon were property, and subject to condemnation. See, also, *Lahr v. Metropolitan El. Ry. Co.,* 104 N. Y. 268 (10 N. E. 528); *State ex rel. Smith v. Superior Court,* 30 Wash. 219 (70 Pac. 484); *State ex rel. Smith v. Superior Court,* 26 Wash. 278 (66 Pac. 385).

This court held, in *Seattle & M. Ry. Co. v. Scheike*, 3 Wash. 625 (29 Pac. 217), that the lessee of land condemned by a railroad company is entitled to the damages resulting to his leasehold estate. And in *Enoch v. Spokane Falls & N. Ry. Co.*, 6 Wash. 393 (33 Pac. 966), we held that, where a railroad company appropriates public lands of the United States upon which a pre-emption entry has been properly made prior to the filing of a profile of the road in the office of the secretary of the interior, the railroad company is liable for damages, although the pre-emption claimant is not at the time entitled to a patent from the government. The decisions of this court above cited are based upon the conception that the interest of the respective parties therein mentioned is included in the terms "land" and "real estate," for on no other theory could such interest be condemned at all.

In *Fish v. Fowlie*, 58 Cal. 373, the supreme court of California, having under consideration the interest of the vendee under an executory contract of sale of land, said: "The words 'real property' are co-extensive with lands, tenements, and hereditaments. 'Land' also embraces all titles, legal or equitable, perfect or imperfect, including such rights as lie in contract—those which are executory as well as those which are executed. Any interest, therefore, in land, legal or equitable, is subject to attachment or execution, levy and sale."

And this court has held that under § 5200, Bal. Code, which provides that "all property, real and personal, of the judgment debtor, not exempt by law, shall be liable to execution," equitable as well as legal estates may be sold on execution. *Calhoun v. Leary*, 6 Wash. 17 (32 Pac. 1070).

It was held by the supreme court of Wisconsin in *Martin*

*v. Scofield,* 41 Wis. 167, that a vendee in an ordinary land contract, with right of possession, is to be regarded as the equitable owner, and as such owner may maintain an action of trover or replevin for timber taken from the land without his consent. In that case it appeared that the owner of the lot from which the logs in controversy were taken executed to the plaintiff in the year 1871 a contract to convey to him, upon his paying to her $200, with interest thereon, in one year, in addition to $57.04 paid at the time the contract was executed. At the time of the trial the $200 had not been paid, but the interest had been paid up to February 1, 1875. The contract provided, among other things, for re-entry in case the vendee should make default in his payments, for a right of distress upon the premises for arrears of interest, and for the recovery of damages for waste. In regard to the relation between the parties to the contract, and the effect of the contract upon the ownership of the land, the court said:

"It has often been held that the relation between the parties to a contract for the conveyance of land is analogous to that of equitable mortgagor and mortgagee in fee of the land affected by the contract. And such is the relation the plaintiff and Mrs. Whitney [the vendor named in the contract] sustain to each other in respect to the land in question. . . . We have no difficulty, therefore, in holding that, when the logs were cut by Coppersmith, the equitable estate in the land upon which they were cut, and the possession and right to the possession of the land, were in the plaintiff. It follows, on the authority of *Northrup v. Trask,* 39 Wis. 515, that the plaintiff was the owner of land, and, of course, of any timber cut upon it, subject only to the right of Mrs. Whitney as mortgagee, and that he alone could maintain trover or replevin for timber and logs taken therefrom without his consent."

The doctrine announced in the case last cited as to the relation between the parties to a valid contract for the sale of land is so firmly settled against the contention of the relators "by a train of uncontroverted authority" that it is now beyond the realm of legitimate controversy. This doctrine of "equitable conversion" has been applied in a great variety of cases, and under divers circumstances. It was recognized and applied, without hesitation, by the supreme court of Pennsylvania in an action of ejectment (which was, of course, an action at law) in the case of *Kerr v. Day,* 14 Pa. St. 112 (53 Am. Dec. 526). In that case the trial court instructed the jury as follows:

"(2) That an agreement to give a party an option of purchasing certain land is a mere personal covenant or agreement, and not such an agreement as vests any interest, legal or equitable, in the land the subject of the contract; and that the defendant, claiming under such agreement alone, without any act of election previous to the sale to the plaintiff, has no such title to the land as furnishes the foundation of a defense to an action of ejectment."

The defendant held the land there in question under an optional contract of sale, and the plaintiff claimed it as owner by virtue of a conveyance made to him by defendant's vendor, the holder of the legal title. Upon that state of facts the appellate court held that the instruction above set forth was erroneous. And the ground upon which the court rested its decision is clearly and tersely stated in the opinion delivered by BELL, J., in the following language:

"The ground upon which a chancellor executes an executory contract for the sale of lands is that equity looks upon things agreed to be done as actually performed; consequently, when an agreement is made for the sale of an estate, the vendor is considered as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor. The vendee is,

in contemplation of equity, actually seised of the estate, and is, therefore, subject to any loss that may happen to it between the agreement and the conveyance, and will enjoy any benefit which may accrue in the same interval. As a consequence, he may sell or charge the estate before conveyance executed; and the death of either vendor or vendee, even before the time of completing the contract, is held to be entirely immaterial. As a result of this principle, which seems to be of general application, it is settled that an estate under contract of sale is regarded as converted into personalty from the time of the contract, notwithstanding an election to complete the purchase rests entirely with the purchaser; and, if the seller die before the election be exercised, the purchase money, when paid, will go to his executors as assets."

In the case of *Lysaght v. Edwards,* L. R. 2 Chan. Div. 499, JESSEL, M. R., speaking of the effect of a contract for the sale of lands, said:

"A valid contract actually changes the ownership in equity. . . . It must, therefore, be considered to be established that the vendor is a constructive trustee of the purchaser of the estate from the moment the contract is entered into. . . . The fact of the purchaser's being able to pay or not being able to pay is immaterial. tract is made, if valid."

See, also, *King v. Ruckman,* 21 N. J. Eq. 599; *Keep v. Miller,* 42 N. J. Eq. 100 (6 Atl. 495); 1 Sugden on Vendors (8th Am. ed. by Perkins), p. 270 *et seq.; Craig v. Leslie,* 3 Wheat. 563; *Haughwout v. Murphy,* 22 N. J. Eq. 531, 546. In the New Jersey case last above cited, the court observed:

"In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase money. After the contract, the vendor is the trustee of the legal

estate for the vendee. . . . Before the contract is executed by conveyance, the lands are devisable by the vendee, and descendible to his heirs as real estate; and the personal representatives of the vendor are entitled to the purchase money."

And Warvelle, in his work on Vendors, vol. 1, p. 197-8, lays down the rule as follows:

"Where the purchaser has been let into possession, he is, in equity, the owner, subject only to the lien of the vendor for the unpaid purchase money.. He has a right to the free use and enjoyment of the property, and to the rents, issues, and profits thereof, so long as he is not in default under the contract. He may mortgage it for the payment of his debts;. may sell and assign his rights to another; or may create a privilege or easement upon any part of the premises which will be valid and binding, but liable to be defeated should there be a failure to pay the balance of the purchase money according to the terms and conditions of the contract of purchase."

The doctrine of equitable conversion has also been frequently invoked in determining upon whom should fall the loss, and who should be entitled to the insurance, if any, in case of destruction by fire of buildings situated upon land under an executory contract of sale. See *Reed v. Lukens,* 44 Pa. St. 200 (84 Am. Dec. 425); *Marks v. Tichenor,* 85 Ky. 536 (4 S. W. 225); *Brewer v. Herbert,* 30 Md. 301 (96 Am. Dec. 582); *Taylor v. Holmes,* 14 Fed. 498. In the well-considered case of *St. Louis, etc., R. R. Co. v. Wilder,* 17 Kan. 239, it was held that a vendee under a bond for a deed is regarded as the real owner of the land, even before full payment of the purchase price is made, and that he, and not the vendor, is entitled to receive the damages if part of the land is taken in a proceeding for condemnation. See, also, *Kuhn v. Freeman,* 15 Kan. 423; *Pinkerton v. Boston & A. R. R. Co.,* 109 Mass. 527;.

2 Lewis, Eminent Domain (2d ed.) § 319.    And in a recent publication it is said that:

"The vendee under an executory contract of sale is the equitable owner, entitled to a deed upon performance of his contract.    If, therefore, pending that performance, a part of the land is taken by sovereign authority, he still remains liable to the vendor for the entire purchase money, is entitled to the entire damages, is a necessary party to the condemnation proceeding, and may maintain the proceeding in his own name."    7 Enc. Pl. & Pr. 507.

It seems clear to us, in view of the authorities, that the relators must be regarded as the real owners of the lots in question, subject only to the right of re-entry and forfeiture on the part of the state in the event of a failure on their part, or that of their successors or assigns, to pay the balance of the purchase price according to the terms of the state's contract.    Indeed, this court said in *Washington Iron Works Co. v. King County, supra,* where the question under consideration was whether tide lands under a contract of sale like the one now before us, were subject to taxation before the contract was fully executed by the vendee, that:    "In equity, appellants are the owners, possessing a real and substantial interest, which they can assign, transfer, and dispose of as they choose; and the state cannot deprive them of this right.    .    .    .    The naked legal title is in the state, but for one purpose only—to secure the unpaid purchase price."

It is true that this case was distinguished in the subsequent case of *State v. Frost, supra,* where it was very properly held that only the interest of the vendee in a contract of sale of state lands can be charged with taxes, and that the state's right to the purchase price, or its right to forfeit the contract for nonpayment thereof, cannot be divested by a tax sale of such lands.    But the doctrine an-

nounced in the former case as to the equitable ownership of the vendee of tide lands under an executory contract of sale was neither repudiated nor questioned.

It is provided in § 5637, Bal. Code, that any corporation authorized by law to appropriate land, real estate, premises, or other property for corporate purposes may present to the superior court a petition describing the property sought to be appropriated and "setting forth the name of each and every owner, encumbrancer, or other person or party interested in the same, or any part thereof, so far as the same can be ascertained from the public records, the object for which the land is sought to be appropriated, and praying that a jury be impaneled to ascertain and determine the compensation to be made in money," etc. And § 5638 provides that a notice stating briefly the objects of the petition shall be served on each and every person named therein as owner, incumbrancer, tenant, or others interested therein, at least ten days previous to the time designated in the notice for the presentation of the petition. But the same section further provides that want of service of such notice shall render the subsequent proceedings void as to the person not served, but all persons or parties having been served with notice as in this section provided shall be bound by the subsequent proceedings. Section ·5640 provides, in effect, among other things, that if the court or judge thereof shall have satisfactory proof that all parties interested in the land, real estate, or premises described in the petition have been duly served with the prescribed notice, the court or judge thereof may make an order directing the sheriff to summon a jury to determine the compensation to be paid to the respective parties entitled thereto. As we have seen, the state of Washington was not served with notice of the hearing of the petition,

and it is therefore insisted by the relators here (as they insisted in the superior court) that the court, under the provisions of said § 5638, requiring each and every person named in the petition to be served with such notice, had no right to make the order now under consideration. But we are of the opinion that the provision requiring notice to be served on all interested parties is not jurisdictional, except as to persons or parties not served. The statute expressly declares that all persons duly served with notice shall be bound by the "subsequent proceedings," but that want of service shall render such proceedings void "as to the person not served." *Owen v. St. Paul, etc., Ry. Co.,* 12 Wash. 313 (41 Pac. 44). And it seems to be the general rule that: "The omission of any proper party will not invalidate the proceeding as against such persons as are made parties. The only consequence is that as against the omitted persons the condemnation will be nugatory." 7 Enc. Pl. & Pr. 504. See, also, *Matter of Boston, etc., Ry. Co.,* 79 N. Y. 69, wherein it was held that, where the lessee alone is made a party, the estate in reversion will not be affected. While it is true that the state holds the naked legal title to these tide lands as trustee for the relators and their assigns, and is, to that extent, interested therein, it is also true that it is no more concerned in the condemnation suit than it would be in a voluntary transfer by the relators of their interest to the respondent herein. The state cannot be involuntarily deprived of its title by condemnation or otherwise, and the fact that it was not made a party to the proceeding cannot affect its rights or those of the relators in any manner or degree whatever. All that the relators are entitled to is just compensation for their interest in the land, and such compensation can readily be determined without regard to the rights of the state or any other person or party.

What we have already said concerning the omission to make the state a party virtually disposes of the objection that the Seattle & Lake Washington Waterway Company is a necessary party to the condemnation proceeding, and should have been served with notice of the hearing of the petition. It must be remembered that the respondent is not seeking to condemn any interest that that company may have in the premises in question, and we are unable to see how the failure to serve it with notice of the preliminary hearing can affect its interest, if it has any, in the land sought to be appropriated by the respondent. The railroad company has elected to carry on its condemnation suit without making the waterway company a party, and it will, therefore, be responsible to the latter company for whatever damages it may suffer in consequence thereof. And the relators will neither gain nor lose anything by reason of the fact that the waterway company was not notified of the hearing in the superior court, and did not appear in that proceeding.

It is also objected that the respondent, the Seattle & Montana Railroad Company, has no right to condemn this property for the purposes indicated in its petition, because it appears from the evidence that it has no rolling stock of its own, does not operate its road, and does and will permit the Great Northern Railway Company and other railroad companies to run their passenger and freight trains over its line into Seattle, and to use its depot and terminal grounds there situated. In other words, it seems to be claimed that the proof shows that the respondent company is seeking, through the exercise of the power of eminent domain, to take the property of these relators not for its own use and benefit, but for the use and benefit of other corporations. We think this objection is wholly untenable.

Under what agreement or understanding between the two companies the respondent's railroad is used and operated by the Great Northern Railway Company, or upon what terms and conditions the cars of other railroad companies are or may be transported over its road, is not disclosed by the evidence; but, whatever the arrangement is under which this may be done, it cannot be presumed to be illegal. Indeed, it is not only the right, but the duty, of the Seattle & Montana Railroad Company, under the law and the constitution of this state, to permit such use of its road by other railroad companies. Bal. Code, § 4318; Const. art. 12, § 13. And, if it be true that said company has leased its railroad to the Great Northern Company, or any other company or companies, or agreed to do so, it is not thereby precluded from condemning and appropriating private property for a public use, which may be necessary for its tracks, side tracks, depots, etc. *In re Metropolitan E. Ry. Co., supra; Crolly v. Minneapolis, etc., Ry. Co.*, 30 Minn. 541( 16 N. W. 422); *Mayor v. Norwich & W. R. R. Co.*, 109 Mass. 103; *In re New York, etc., Ry. Co.*, 99 N. Y. 12 (1 N. E. 27); *Chicago, etc., R. R. Co. v. Illinois Central R. R. Co.*, 113 Ill. 156. In *In re Metropolitan El. Ry. Co.*, 2 N. Y. Supp. 278, *supra*, it was objected that the condemnation proceedings could not be maintained by the petitioner because of the lease of its line of road to another company. Concerning the objection, the court said:

"This objection is not well founded, because it has been repeatedly decided that the leasing of the line of a railway corporation to another corporation does not deprive the former of the power to exercise the right of eminent domain."

The Illinois case above cited (113 Ill. 156) is an

interesting and instructive one, and is directly in point here, especially on the question of the power of a lessor railroad company to condemn private property for corporate purposes. In that case, as in this, the company seeking to appropriate the property did not own any cars or locomotives, and did not transport passengers or freight, and had leased its line to other companies, and yet the court there held that it was not thereby deprived of the right to take property under the power of eminent domain.

We see no prejudicial error in the proceeding in the superior court, and the order under review is affirmed.

FULLERTON, C. J., and HADLEY, DUNBAR, and MOUNT, JJ., concur.