# Snyder, Appellant, *v.* Baltimore & Ohio Railroad Company.

*Railroads—Eminent domain—Widening road—Taking of dwelling house—Lease—Act of March 17, 1869, P. L. 12.*

Where by reason of increased business it becomes necessary for a railroad company to widen its roadbed for additional tracks, the company in widening its road may condemn a dwelling house. This right is not affected by the fact that the company has leased its road to another company, and that the widening operates for the benefit of the lessee.

Argued Nov. 2, 1904.   Appeal, No. 197, Oct. T., 1904, by plaintiff, from decree of C. P. No. 1, Allegheny Co., March Term, 1903, No. 204, dismissing bill in equity in case of Mary C. Snyder and Lyda Dellnora Snyder v. Baltimore & Ohio Railroad Company, the Pittsburg & Connellsville Railroad Company and the Glenwood Railroad Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction. Before MACFARLANE, J.

From the record it appeared that the Glenwood Railroad Company, a corporation organized under the general railroad act of April 4, 1868, leased its road to the Pittsburg & Connellsville Railroad Company, a corporation chartered by the state of Pennsylvania on April 3, 1837, and that the latter company leased its property to the Baltimore & Ohio Railroad Company, a corporation of the state of Maryland. In 1903, the Glenwood Railroad Company instituted proceedings to condemn plaintiff's land, including a dwelling house, for the purpose of widening its road. MACFARLANE, J., found, inter alia, the following facts:

11. Since the time of its completion, the Glenwood Railroad Company has maintained a series of railroad sidings, known as a yard, extending from a point on Elizabeth street to Vespucius street, said tracks being used for the purpose of receiving and storing cars coming to the Glenwood Railroad at either end, making up trains and dispatching them to their points of destination.

12. The business done over the Glenwood Railroad has, in

the last year, so largely increased, that the sidings so used have become entirely insufficient to handle with convenience and dispatch the number of cars daily received, and upon September 17, 1902, the board of directors of the Glenwood Railroad Company regularly adopted the following resolutions :

"Resolved, that in order to accomodate the business of this company, it is necessary to construct yard tracks and railroad sidings, roundhouse, trestle and shops at Glenwood, twenty-third ward, city of Pittsburg, and for such purpose to appropriate and acquire all the property lying between Vespucius street and Allegheny street, and between Gloster street and Lytle street.   Be it further

"Resolved, that the location of the said railroad sidings, roundhouse and other improvements, as shown by the survey and plan thereof made by the engineer of this company, and herewith submitted as part of this resolution, be, and the same is hereby adopted and approved.   Be it further

"Resolved that the proper officers of this company are hereby authorized and instructed to acquire all the land necessary for the construction of said improvements, either by voluntary purchase, or, if necessary, by condemnation, in accordance with the charter of this company, and that they proceed immediately with the construction of said improvements."

13. The property of the plaintiffs above described, lying within the space described in the said resolution, was appropriated by the Glenwood Railroad Company for the purposes therein mentioned, and said lots will be occupied by railroad tracks or sidings used for the purpose of storing cars while not in use.

14. Such additional tracks as the Glenwood Railroad Company proposes to build are, in the judgment of the board of directors, necessary to increase the facilities for transportation over the Glenwood Railroad Company, and are, as a fact, so necessary.

15. The Glenwood Railroad Company has acquired by purchase, or by the exercise of eminent domain, all the property lying between the original main tracks of its railroad, and Gloster street, and between Vespucius street and Allegheny street, excepting only two or three small lots, for which negotiations to purchase have not yet been concluded.

16. The Glenwood Railroad Company was incorporated for the purpose of constructing the railroad described in its charter, in order to assist the Baltimore & Ohio Railroad Company, as the lessee of the Pittsburg & Connellsville Railroad, in the transportation of traffic coming to the Pittsburg & Connellsville at Glenwood, the eastern terminus of the Glenwood Railroad, and at Laughlin Junction, the western terminus of the Glenwood Railroad, between the said points ; and the Baltimore and Ohio Railroad Company loaned to the Glenwood Railroad Company the funds necessary to construct the said railroad and its various appurtenances.

### CONCLUSIONS OF LAW.

1. The Glenwood Railroad Company has the right to appropriate the property of the plaintiffs for the purpose of widening and otherwise improving its lines, and the directors having determined that the proposed improvements are a necessity, and as they are in fact a necessity for the increased traffic over its lines, bond having been given in condemnation proceedings, the plaintiffs have no standing to object.

2. Dwelling house property in the occupancy of the owner may be appropriated by the Glenwood Railroad Company for the purpose of widening and improving its lines.

3. Neither the Baltimore & Ohio Railroad Company nor the Pittsburg & Connellsville Railroad Company is about to take, nor have either taken, the property of the plaintiff.

4. The injunction prayed for is refused, and the bill is dismissed at the cost of the plaintiffs.

*Error assigned* was decree dismissing the bill.

*Levi Bird Duff*, with him *John F. Edmundson*, for appellants.— The case is not controlled by Glaser v. Railway Co., 208 Pa. 328. It is established by the bill, answer and proofs in this case that the appropriation of plaintiffs' property by the Glenwood Railroad Company was solely for the benefit of the Baltimore & Ohio Railroad Company.

After the lease, the lessor company would still exist, but it would cease to need additional tracks and facilities, and if it continued to exercise the right of eminent domain, it would be exercised for the benefit of the lessee, in this case a foreign

company: St. Louis & San Francisco R. R. Co. v. Foltz, 52 Fed. Repr. 627; Koenig v. C., B. & Q. R. R. Co., 27 Neb. 699 (43 N. W. Repr. 423).

The special charter of the Pittsburg & Connellsville Railway Company, section 8, Act of April 3, 1837, P. L. 185, contains this provision: "Said railroad company shall not pass through or over any burial ground or ground belonging to any place of public worship intended for that purpose, or any dwelling house without the consent of the owner thereof."

In Dryden v. Railway Co., 208 Pa. 316, it is held that the Act of February 19, 1849, P. L. 79, exempting dwelling houses in the occupancy of its owners is not to be read into the Act of March 17, 1869, P. L. 12, authorizing the widening of railroad lines. Does the act of 1869 repeal the special provisions of the Act of April 3, 1837, P. L. 185, incorporating the Pittsburg & Connellsville Railroad? There is no express repeal. Nor is there repeal by implication. Such repeals are not favored and are not allowed, except in cases of strong repugnancy or irreconcilable inconsistency: Harrisburg v. Sheck, 104 Pa. 53; Wright v. Vickers, 81 Pa. 122; In Re Barber's Election, 86 Pa. 392.

*Johns McCleave*, with him *John S. Wendt*, for appellees.—So far as the appellants undertake to question the legal powers of the Glenwood Railroad Company, because of the manner of its incorporation, the contention is disposed of by the decision of this court in Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.

The whole of the contention attempted in the present case was heard and disposed of in the case of Market Co. v. Philadelphia & Reading Terminal Co., 142 Pa. 580.

The fact that the Baltimore & Ohio Railroad Company owns all the stock of the Glenwood Railroad Company does not make it and the Glenwood Railroad Company one and the same party, nor destroy the identity or separate existence and powers of the Glenwood Railroad Company: Rhawn v. Edge Hill Furnace Co., 201 Pa. 637.

OPINION BY MR. JUSTICE THOMPSON, December 31, 1904:

The Glenwood Railroad Company, one of the appellees by resolution of its board of directors duly adopted, resolved that

the location of the sidings of their railroad, roundhouse and other improvements in the plan submitted by its chief engineer be approved and that the proper officers be authorized to take steps to appropriate and condemn the property necessary for such sidings and improvements. The dwelling houses of the appellants were appropriated under this resolution and by bill filed in this case they sought by injunction to restrain appellees from taking and condemning the same.

The learned trial judge finds as a fact that the proposed tracks and improvements were in the judgment of the board of directors of that company necessary to increase the facilities for transportation over its railroad. He also found as a fact that they were so necessary. He further found that " The Glenwood Railroad Company is a corporation of the state of Pennsylvania, created and organized under the provisions of an act of the general assembly of the said state entitled ' An act to authorize the formation and regulation of railroad corporations ' approved April 4, 1868, P. L. 62., and the several supplements thereto, and is possessed of all the franchises and powers conferred by said acts, and particularly by the act entitled ' An act to enable railroad, canal and slack water navigation companies to straighten, widen, deepen or otherwise improve their lines of railroad, canals and slack water navigation, and the bridges, aqueducts, piers and structures thereof,' approved March 17, 1869, P. L. 12." Thus the incorporation of that company, its organization, its franchises and powers to conduct business and to widen and improve under the act of March 17, 1869, are distinctly established. Owing to the exigency arising from increase in population and a consequent enlargement of business the act of 1869 was intended to remove from railroad companies when the necessity of enlargement or improvement arose, the restriction as to dwelling houses contained in the general railroad act of 1849.

In the case of Dryden v. Railway Co., 208 Pa. 316, Mr. Justice DEAN says :

" In the meantime the business of the railroads had enormously expanded ; they wanted more room ; in many cases it was impossible for them to perform the duties enjoined upon them by law and which by their charters they were bound to

perform without increase of trackage; the public suffered as well as they; they had exhausted their power of location by their original taking; the land on each side had been improved by the erection of dwelling houses and other improvements close up to the line of their roadbed; they could not move their main line, and if they could have done so they would have been met by practically the same obstacles on a new route. Yet the public demand for transportation facilities had to be met. Such were the facts that in 1869 prompted the passage of that act. It was a necessity, which necessity has since become far more imperative."

Again he says: " By its express terms this act conferred upon railroad companies an authority which they did not theretofore have; it restricted no road, whether its orignal taking was sixty feet, or less, to its first appropriation; it could widen and otherwise improve its line whenever in the opinion of its board of directors such widening was necessary. To give the act any other meaning, would, in view of the facts, defeat its main purpose. Any house owner could effectually put a stop to any attempt of the company to provide for the safety of persons and property or to furnish increased facilities for transportation. There is not a word in the act which manifests an intention to limit the power as in the tenth section of the Act of 1849, P. L. 79, nor has it ever been so interpreted by this court."

The Glenwood Railroad Company had the power to appropriate and condemn the land in question and it cannot successfully be said that the power is stricken down because its exercise operates for the benefit of the company's lessee or lessees.

In the case of Glaser v. R. R. Co., 208 Pa. 328, the same Justice said:

" The inference that the taking is not for the benefit of the defendant company because its road has been leased to the Baltimore and Ohio, is not warranted by that fact. It has been held in every case, where the question arose, that when the corporate identity of the lessor company was maintained, that its statutory powers were continued, although the exercise of them inured partly to the advantage of the lessee company. It may be safely assumed that no lease of corporate property

would be made if the lessee thereby relinquished all the corporate powers of the lessor company."

The contention of the appellants that as the Glenwood company had leased its railroad and property and owns no cars or motive power that the appropriation of appellants' land was not necessary to increase its facilities for business and transportation is confronted with the findings of the learned trial judge that the company has, by a proper resolution, determined that it is necessary and in addition that as a matter of fact that it is so. The power of the board of directors to determine the necessity of widening and improving is lodged with it and its action is conclusive, unless fraud or bad faith be shown. As a lessee company operating a road ordinarily furnishes most of the cars and all that is necessary in the conduct of transportation, a lessor company may deem it necessary to widen its road and improve the leased property in order to meet the demands of the increased business passing over it. In fact the failure of a lessor company so to exercise its power in certain contingencies, might in some cases operate as destructive of important rights of a lessee in the operation of the leased property and thus render its lease almost valueless. In the present case the lessor company, finding that the widening and improvement of the property was necessary and was required for the transportation conducted by the lessees (the other appellees), determined by proper corporate action that the appropriation of the properties in question was necessary. Assuredly its power so to appropriate could not be questioned if done for itself and it certainly does not cease to exist because its exercise might operate to the benefit of its lessees, who could properly request that the power be so exercised by the lessor to meet the exigencies growing out of increased transportation.

This is not a case as argued by appellants of a foreign corporation (the Baltimore and Ohio Railroad) using the charter right of a Pennsylvania company and its leased lines to appropriate private property, but one where a lessor company exercises the power which it possesses under its charter and appropriates the property in question. If bad faith be alleged in such exercise of the powers so existing, such question can only be raised by the commonwealth : Windsor Glass Company v. Carnegie Company, 204 Pa. 459.

The power of the Pittsburg and Connellsville Railroad to lease from the Glenwood Railroad Company, and that of the Baltimore and Ohio Railroad Company to lease the railroad and leased lines of the first named company are practically conceded and if this be so, the action of the lessor company, the Glenwood Railroad Company, in appropriating lands necessary for it, and so determined to be by proper authority, can in no sense of the word be an exercise of the power of eminent domain by the Baltimore and Ohio Railroad Company, a foreign corporation.

The assignments of error are not sustained and the decree is affirmed.