GREAT FALLS POWER COMPANY *v.* JOHN H. WEBB.[*]

(*Nashville.* December Term, 1910.)

1. **EMINENT DOMAIN. Petition for condemnation is taken as true upon demurrer.**

   The allegations of the petition for the condemnation of lands must .be taken as true upon demurrer thereto. (*Post, pp.* 590, 594.)

2. **SAME. Supplying electricity for light, heat, and motive power to the public is a public use.**

   The supplying of electricity for light, heat, and motive power to all who desire it is a public use, and land necessary to obtain a sufficient water power to generate electricity for such use may be condemned under the eminent domain laws by a corporation chartered and organized under our corporation laws for such purpose. (*Post, pp.* 586-594.)

   Acts cited and construed: Acts 1901, ch. 144; Acts 1909, chs. 127 and 151.

   Constitution cited and construed: Art. 1, sec. 21.

   Cases cited and approved: Ryan v. Terminal Co., 102 Tenn., 116-118, 122; Jones v. Electrical Co., 125 Ga., 618; Light & Power Co. v. Hobbs, 72 N. H., 531; Power Co. v. Spratt, 35 Mont., 108; Walker v. Power Co., 160 Fed., 856, 87 C. C. A., 660; Minnesota, etc., Co. v. Koochiching, 97 Minn., 429; In re Niagara, etc., Power Co., 111 App. Div., 686.

3. **SAME. Right or power is not defeated by incidental charter power to engage in private enterprises.**

   A corporation's mere possession of incidental charter powers to engage in private enterprises will not deprive it of the right or

---

[*]As to generation of electricity for sale to public for purposes of power as a public purpose, see notes in 2 L. R. A. (N. S.), 842, and 19 L. R. A., 725.

Power Co. v. Webb.

power of eminent domain, conferred upon it to facilitate and effectuate its public purposes and functions, in a particular case where it is seeking to condemn land for the promotion of the public uses which it is authorized to undertake. (*Post, pp.* 594-596.)

Cases cited and approved: Collier v. Railroad, 113 Tenn., 121; Phosphate Co. v. Phosphate Co., 120 Tenn., 260, 275; Walker v. Power Co., 160 Fed., 856; Brown v. Gerald, 100 Me., 351.

4.  **SAME.  No presumption that land is sought for private purposes upon demurrer to petition alleging that it is desired for a public use.**

A petition for the condemnation of land by a corporation chartered and organized under our general corporation laws, and more especially under Acts 1901, ch. 144, and Acts 1909, chs. 127 and 151, which states that it desires the land in connection with its works for the production of electricity for the use and benefit of the public, including enumerated cities, for street lighting, and to all citizens thereof who may wish electricity, at a uniform rate, alleges a desire to acquire the land for a public use, and the court cannot presume, upon demurrer to the petition, that the corporation is seeking the land for purposes other than those stated. (*Post, pp.* 586-595.)

5.  **CORPORATIONS.  Legislature may fix rates and make duties more specific.**

Where a corporation and its property are affected by a public use, it will be under governmental control, and the legislature may at any time make more specific the duties clearly implied from the act of incorporation, and fix the rates for the services rendered. (*Post, p.* 597.)

Cases cited and approved:  Crumley v. Water Co., 99 Tenn., 420; Water Co. v. Wolfe, 99 Tenn., 429; Munn v. Illinois, 94 U. S., 113; Budd v. New York, 143 U. S., 517; Brass v. North Dakota, 153 U. S., 391.

6.  SAME.    Admission and judicial determination that the busi-
ness is affected with a public use gives legislature power to
regulate an electricity corporation.

Where a corporation asserts that its business of supplying elec-
tricity to all who may desire it is affected by a public use,
and in that character it seeks to exercise the power of eminent
domain, and the court sustains its contention that it possesses
the power, it is thus both admitted and judicially determined
that its business is affected with a public use, and the right of
the legislature to regulate its rates and services, and to prevent
discrimination, is as complete as though such right was ex-
pressly reserved in its charter.    (*Post, p. 597.*)

### FROM WARREN.

Appeal from the Circuit Court of Warren County.—
EDWIN L. DAVIS, Judge.

CHESTER K. HART, JNO. R. AUST and DAN E. MC-
GUGIN, for plaintiff.

M. D. SMALLMAN and ROBINSON & FAUCHER, for de-
fendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

In this cause the effort of the Great Falls Power Com-
pany to exercise the right of eminent  domain  is  chal-
lenged.

This company was organized under the general corpor-
ation laws of Tennessee, and more especially under chap-
ter 144, Acts 1901, chapter 151, Acts 1909, and chapter
127, Acts 1909.

Without pausing to enumerate or discuss the various powers conferred on this corporation by its charter, we find that, among others, it is endowed with authority to develop the "water powers of the rivers and streams of this State, whether in fact navigable, or by law declared navigable; to manufacture electricity to be used for making electric lights, furnishing motive power, electrotyping, telephone purposes, or for any other purpose to which electricity is now or may hereafter be applied in any manner or form whatever; and more particularly for developing the water power of the Great Falls on the Caney Fork river, on the line between White and Warren counties, in the State of Tennessee, the conversion of the same into electrical energy and the transmission thereof by wires and conductors to the following towns and cities in Tennessee, viz.: Murfreesboro, Carthage, Lebanon, Shelbyville, McMinnville, Columbia, Franklin, Chattanooga and Nashville; and for this purpose said company is hereby authorized and empowered and invested with the privilege of constructing, maintaining and operating, in such rivers in this State, dams, piers, sluiceways, canals, locks, ponds, breakwaters, abutments and mill sites for manufacturing purposes, upon the following provisions and conditions."

It filed its petition to condemn certain lands of defendant, by virtue of the authority conferred upon it by the acts under which it was incorporated. To this petition a demurrer was filed, and, the same being overruled, an appeal was taken by defendant to this court. The parties agreed on the value of the land, in the event petition-

er's right of condemnation was established in this court, so that the trial court allowed the appeal without further proceedings.

In the petition for condemnation, it was said:

"(3)   That your petitioner is now, and has been since the year 1901, engaged in developing and improving the water power of the Caney Fork and Collins rivers and their tributaries in White, Warren, and Van Buren counties, in the State of Tennessee, and more particularly the water power of the Great Falls of Caney Fork river just below the mouth of Collins river.

"And your petitioner then  proposes,  among  other things, to transfer said electricity by means of transmission lines to the cities of Murfreesboro, Woodbury, and Nashville and other cities and towns in the State of Tennessee, to be sold to said cities and towns for the purpose of lighting the streets thereof, and to be sold to all citizens thereof, who may wish such current, at a uniform and reasonable rate.   And your petitioner has a franchise from the city of Nashville for a term of thirty-five years, beginning September 10, 1911, and said franchise provides for the furnishing of electric lights to the city of Nashville and to citizens thereof. . . . . .

"(7)   That the object for which the lands and premises above described are desired to be acquired and wanted by petitioner are as follows:

"Said petitioner proposes to erect a dam at, near, or slightly above the Great Falls of the Caney Fork river, partly in said White county and partly in Warren county, whereby it will raise the waters of the said Caney

Fork river and said Collins river and their tributaries, so as to obtain a proper and sufficient head of water for the developement and generation thereby of power and electricity, and the premises so wanted will, with other premises, be required for the purpose of taking care of the back flows and storage water so dammed, and for the use in connection with the necessary and proper maintenance and operation of the works proposed to be erected in connection with the developement of said water power properties, and the further objects and uses are more fully set forth in section 3 above.

"And it is absolutely necessary and essential• that your petitioner have said lands in order to improve and develop said water power, and to carry out the uses and purposes above set forth, and as set forth in section 3 above.

"That it is the intention of your petitioner in good faith to complete the work or improvement, for which the property is to be condemned, and that all the preliminary steps required by law have been taken to enable it to institute the action or proceeding. Your petitioner has endeavored to purchase said land, but did not agree with the owner on the price."

Appellant relies on the same defense here which he interposed by demurrer below. The grounds of this demurrer will be stated and discussed separately.

The first two grounds of demurrer are akin and are:

First. "Because the acts under which plaintiff claims to be chartered and organized are violative of article 1, section 21, of the constitution of Tennessee, in that it

seeks to take and appropriate defendant's property for private use."

Second. "Because the charter of the plaintiff shows that its purposes and uses are private, and not public."

It thus appears from the allegations of the petition, which on the demurrer are taken as true, that the company wishes to obtain this land for the purpose of taking care of the back flow of the waters caused by its dams, which it proposes constructing to obtain a sufficient head of water to operate its electrical works. By means of this water power, so conserved, the petitioner proposes to generate electricity for the use and benefit of the public, and, "among other things, to transfer said electricity by means of transmission lines to the cities of Murfreesboro, Woodbury, and Nashville, and other cities and towns in the State of Tennessee, to be sold to said cities and towns for the purpose of lighting the streets thereof, and to all citizens thereof who may wish such current at a uniform and reasonable rate."

So that the first question arising is whether the use of property for generating and supplying electric current, as above indicated in the petition, is a public use. It is, of course, elementary that the property could not be taken under condemnation proceedings for a private use.

This court has heretofore avoided an attempt to define a public use, as have all others, and it has said:

"The term 'public use' is a flexible one. It varies and expands with the growing needs of a more complex social order. Many improvements universally recognized as impressed with a public use were nonexistent a few years

ago.  The possibility of railroads was not dreamed of in a past not very remote; yet, when they came, the courts, recognizing the important parts they were to perform in supplying a public want, did not hesitate to take control of them as quasi governmental agents, and extend to them the right of eminent domain, in order to equip them thoroughly to discharge the duties to the community which followed their grant of franchises.  This is equally true as to the other appliances which now form a part of a rapidly widening system of social and commercial intercommunication.  So it may be said at the present time that 'anything which will satisfy a reasonable public demand for public facilities for travel or for transmission of intelligence or commodities,' and of which the general public, under reasonable regulations, will have a definite and fixed use, independent of the will of the party in whom title is vested, would be a public use."  *Ryan* v. *Terminal Company,* 102 Tenn., 116-118, 50 S. W., 744, 45 L. R. A., 303.

It is again said:

"It must in some way enlarge the resources, increase industrial energies, promote the productive powers of or afford increased facilities for the rapid exchange of thought  or trade, or otherwise answer  the growing needs of the community as such, before the use becomes such and the agency controlling passes under governmental control."  102 Tenn., 122, 50 S. W., 746 (45 L. R. A., 303).

A growing need of a modern community is most certainly the need for electric current.  Not only as municipalities do we demand such current, for street lighting

and the like, not only do our public service corporations require it for transportation of passengers and commodities, but it is demanded in every household, store, factory, and office, and in fact everywhere that light, heat, or motive power is wanted. Its uses are multiplied daily. It has long been held that the supplying of water to a community was a measure of public utility, and the supplying of electricity to a modern community is scarcely less a measure of public utility. Upon this subject a learned author says:

"The furnishing of electricity to the public for light, heat, and power, that is, to such members of the public within a given territory as may desire the current for any or all such purposes, is a public use for which the power of eminent domain may be exercised. The knowledge recently acquired concerning electricity has made it possible to divide power into any desired units and to freely transmit the same to almost any point for use. This has created a demand for power which, though not so universal as the demand for water, is nevertheless of a public character. Like water, electricity exists in some form or state, and becomes useful as an agency of man's industry only when collected and controlled. It requires a large capital to collect, store, and distribute it for general use. The cost depends largely on the location of the power plant. A water power or a location upon the water tide reduces the cost materially. It may happen that the business cannot be inaugurated without the aid of the power of eminent domain for the acquisition of necessary lands or rights in lands. All these considera-

tions tend to show that the use of land for collecting, storing, and distributing electricity, for the purpose of supplying power and heat to all who may desire it, is a public use, similar in character to the use of land for collecting, storing, and distributing water for public needs—a use that is so manifestly public 'that it has. seldom been questioned and never denied.'

"And where the object to be accomplished is the production and distribution of electricity to the public for any of the purposes mentioned, property and property rights may be condemned for whatever purpose is necessary to accomplish such object. Consequently land and water rights may be condemned for dams, reservoirs, canals, and flumes for the creation and utilization of water power to be used in generating the electric current and for works for such generation; also for works and rights of way for transforming, transmitting, and distributing the current." Lewis on Eminent Domain, section 268.

To the same effect, see *Jones v. North Georgia Electrical Company,* 125 Ga., 618, 54 S. E., 85, 6 L. R. A. (N. S.), 122, 5 Am. & Eng. Ann. Cas., 526; *Rockingham Light & Power Company* v. *Hobbs,* 72 N. H., 531, 58 Atl., 46, 66 L. R. A., 585; *Helena Power, etc., Company* v. *Spratt et al.,* 35 Mont., 108, 88 Pac., 773, 10 Am. & Eng. Ann. Cas., 1055; *Walker* v. *Shasta Power Company,* 160 Fed., 856, 87 C. C. A., 660, 19 L. R. A. (N. S.), 725; *Minnesota, etc., Company* v. *Koochiching,* 97 Minn., 429, 107 N. W., 405, 5 L. R. A. (N. S.), 638, 7 Am. & Eng.

Ann. Cas., 1182; *In re Niagara, etc., Power Company,* 111 App. Div., 686, 97 N. Y. Supp., 853.

Although there are some contrary views expressed, we are of opinion that the supplying of electric current for lighting, heating, and motive power, where all who desire are entitled to demand a supply for such purposes, is, at the present day a public use, particularly, as in this case, where the opportunities of the petitioner to serve a large portion of the public are so apparent, and its purposes to do so are conceded by the demurrer.

The third ground of demurrer is:

"Plaintiff's charter shows that a great many of its purposes are private, and the petition does not show that the lands sought to be taken will not be used for such private uses."

We do not find it necessary to determine here whether all the purposes expressed in petitioner's charter are public or not. In passing upon any particular condemnation suit, the court does not look so much into the character of the charter of a corporation, and to its general powers, as to the pleadings and proof in the case before it. The court is concerned to know whether the property sought to be appropriated is to be devoted to the use of the public. The fact that a corporation may have incidental charter powers to conduct some private enterprise does not deprive it of the right of eminent domain conferred upon it to facilitate the execution of its public functions and duties.

The question here is not whether this corporation has the power, under its charter, to engage in a private busi-

ness, but whether the corporation is seeking to acquire the land in question for a public or private end.

"The question is not whether the corporation sought to be endowed with the right of eminent domain is public or private, but whether the property sought to be condemned is to be used for a public purpose. If it is to be so used, the right of condemnation can be bestowed upon any private corporation; but, if not to be so used, it cannot be conferred either upon a private or public corporation." *Phosphate Company* v. *Phosphate Company,* 120 Tenn., 260, 275, 113 S. W., 410, 22 L. R. A. (N. S.), 701.

Looking to the petition, we find it stated that the corporation desires this land in connection with its works, for the production of power "to generate electricity for the use and benefit of the public;" the petition then going on to name some communities to which it proposes to supply current.

Now, we have just held that the purposes of the corporation so expressed in the petition are a public use. So far as this record discloses, petitioner is seeking the land for no other purposes than those stated. We cannot presume it to be acting in bad faith. If, after acquiring lands under condemnation proceedings for a public use, it should devote them entirely to private ends, and disregard its duties to the public, the remedies of the public and of the defendant are abundant and effective.

The authorities are convincing to the effect that the mere possession of incidental charter powers to engage in private enterprises will not be held to deprive a corporation of the right of eminent domain given it to

effectuate its public purposes, in a particular case where it is seeking to exercise this right for the promotion of the public uses which it is authorized to undertake. *Walker* v. *Shasta Power Company,* 160 Fed., 856, 87 C. C. A., 660, 19 L. R. A. (N. S.), 725; *Brown* v. *Gerald,* 100 Me., 351, 61 Atl., 785, 70 L. R. A., 472, 109 Am. St. Rep., 526; *Collier* v. *Railroad,* 113 Tenn., 121, 83 S. W., 155; 15 Cyc., 579; Lewis on Eminent Domain (3d Ed.), section 314.

In the case of *Walker* v. *Shasta Power Company,* supra, from the circuit court of appeals of the ninth circuit, it is said:

"We find no case which holds that the bare fact that a corporation has, in enumerating its functions, expressed a purpose of engaging in a private enterprise as well as serving a public use, shall deprive it of the right to exercise eminent domain for the public use. Not only is there no authority for such a proposition, but there is no reason for it. Why should the fact that the defendant in error here was incorporated under articles giving it the powers to serve a private use be an obstacle to its condemnation of property necessary, and which it proposes and proves shall be used exclusively, for a public service? The fact that it has such power imposes no greater or additional burden or servitude upon the property which it seeks and purposes to take for the public use only."

The fourth and fifth grounds of demurrer have been considered and disposed of orally, and raised no point of particular interest.

A suggestion was made during the argument of this case to the effect that there was nothing in the act on

which rests the charter of this corporation to safeguard and protect the public interest, and for that reason its business would not be considered as affected with a public use. The same point was made in *Ryan* v. *Terminal Company,* supra; but this court said it was immaterial.

"The corporation and its property, being affected by a public use, will be under governmental control, and the legislature may at any time fix rates and make more specific the duties clearly implied from the act of incorporation. *Munn* v. *Illinois,* 94 U. S., 113 [24 L. Ed., 77]; *Budd* v. *New York,* 143 U. S., 517 [12 Sup. Ct., 468, 36 L. Ed., 247]; *Brass* v. *North Dakota,* 153 U. S., 391 [14 Sup. Ct., 857, 38 L. Ed., 757]."

To the same effect, see *Crumley* v. *Watauga Water Company,* 99 Tenn., 420, 41 S. W., 1058, and *Watauga Water Company* v. *Wolfe,* 99 Tenn., 429, 41 S. W., 1060, 63 Am. St. Rep., 841.

This corporation has asserted its business to be affected with a public use, and in that character has sought to exercise the right of eminent domain, and the court has sustained its contention. It having been thus admitted, and also judicially determined, that the business is affected with a public use, the right of the legislature to regulate its rates and service, and to prevent discrimination, etc., is as complete as though such right was expressly reserved in the charter. This, indeed, is frankly conceded by counsel for petitioner at the bar of this court.

There is no error in the judgment below, and it will be affirmed, with costs.