D. C. WEBB *et al. v.* KNOX COUNTY TRANSMISSION CO.

J. N. BARGER *et al. v.* SAME.

(*Knoxville.* September Term, 1920.)

1. **EMINENT DOMAIN.** Supplying of electric current is a ''public use.''

The supplying of electric current for lighting, heating and motive power, where all who desire are entitled to demand a supply for such purpose, is a "public use," for which condemnation may be allowed. (*Post, p.* 432.)

Acts cited and construed: Acts 1901, ch. 144; Acts 1909, ch. 127, 151. Case cited and approved: Power Co. v. Webb, 123 Tenn., 584.

2. **EMINENT DOMAIN.** That electric power company did not supply every individual held not to effect public use.

Where an electric power company supplied current to the general public without discrimination at uniform rates, the fact that it did not supply individual users at points along its line, unless there was sufficient demand to warrant the installation of transformers, etc., does not establish that the use was not a public one, so as to deprive the power company of the right of condemnation. (*Post, pp.* 432, 435.)

Cases cited and approved: N. Y., L. & W. R. Co. v. Union Steamboat Co., 99 N. Y., 12; C. & W. I. R. Co., v. I. C. R. Co., 113 Ill., 156; Crolly v. Minneapolis & St. Louis Ry. Co., 30 Minn., 541; Snyder v. B. & O. Railroad Co., 210 Pa., 500.

---

*On exercise of power of eminent domain by one corporation for a public to be subserved by another, see note in 21 L. R. A. (N. S.), 448.

On the question of generation and diffusion of electric energy, see notes in 2 L. R. A. (N. S.), 842; 19 L. R. A. (N. S.), 725; 22 L. R. A. (N. S.), 136.

Cases, cited and distinguished: Rockingham County Light & Power Co. v. Hobbs, 72 N. H. 537; Railroad v. Transportation Co., 128 Tenn., 283; Ryan v. Terminal Co., 102 Tenn., 111; State ex rel. Dominick v. Superior Court of King County, 52 Wash., 196; Calor Oil & Gas Co. v. Franzell, 128 Ky., 715; State ex rel. Trimble v. King County Superior Court, 31 Wash., 445.

3. EMINENT DOMAIN. Fact that condemning corporation is affiliated with others does not destroy right.

Where ,lands were sought to be condemned for a power company's transmission line, the fact that the power company was affiliated with or promoted by other corporations will not destroy its right of condemnation. (Post, pp. 435-437.)

Cases cited and approved: Railroad Co. v. Cable Co., 111 Fed., 842; Postal Telegraph Co. v. Railroad Co., 23 Utah, 474; Oliver v. Bridge Co., 197 Pa., 344; Railroad v. Railway 116 Tenn., 504.

4. EMINENT DOMAIN. Power of eminent domain cannot be defeated because corporation is violating anti-trust laws.

The fact that the condemning corporation may be violating the anti-trust laws is no defense which will deprive it of the right to condemnation. (Post, pp. 437-439.)

5. EMINENT DOMAIN. Condemnation cannot be defeated on ground right of way was improperly located.

The power of an electric company to condemn a right of way for its power line cannot be defeated on the ground that the right of way was improperly located, being too close to a village, for the question of location is for the condemnor, and it further appeared that such a line passed through a more populous village. (Post, pp. 439-441.)

Cases cited and approved: Railway v. Campbell, 109 Tenn., 655; Railroad v. Union City, 137 Tenn., 500; Gamble v. Paine, 141 Tenn., 551; Western Union Telegraph Co. v. Railroad, 133 Tenn., 710.

Case cited and distinguished; Railway v. Memphis, 126 Tenn., 267.

6. EMINENT DOMAIN. That condemnor did not generate its own electricity is no defense to condemnation.

That a distributing power company did not generate its own electricity, etc., but acquired it from another company, is no defense to eminent domain. (*Post, pp.* 441, 442.)

7. **EMINENT DOMAIN.** Acts under which power company was chartered not invalid, because not restricting use of condemned property.

The right of a power company organized under the general corporation laws, and more especially Acts 1901, chapter 144, and Acts 1909, chapters 127, 151, to condemn lands, *held* not open to attack on the ground that the acts were violative of Constitution, article 1, section 21, because they did not restrict to a public use alone the use of the property authorized to be condemned. (*Post, p.* 442.)

Case cited and approved: Noell v. Power Co., 130 Tenn., 245.

---

## FROM KNOX.

---

Appeal from the Circuit Court of Knox County.—HON. VON A. HUFFAKER, Judge.

DONALDSON & MONTGOMERY, for appellants.

LUCKY, JONES & ANDREWS, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

In these cases the effort of the Knox County Transmission Company to exercise the right of eminent domain is challenged.

This company was organized under the general corporation laws of Tennessee, and more especially under chapter 144, Acts of 1901, chapter 151, Acts of 1909, and chapter 127, Acts of 1909.

The defendants, D. C. Webb and J. N. Barger, are adjoining property owners, over whose lands the company is seeking to condemn a right of way for the erection of an electric power line. The company filed separate petitions against these defendants, seeking to have these rights of way over their lands condemned.

The defendants separately answered, denying the right of petitioner to condemn upon a number of grounds set forth in their respective answers.

Proof was taken upon the issues raised in both cases, and the cases were heard together in the court below upon exactly the same evidence, although they were not consolidated.

The trial resulted in a final judgment being entered sustaining the petitions in both cases, holding that petitioner had the right to condemn, and ordered said rights of way condemned for the benefit of petitioner.

Both defendants made motions for new trials in writing, which motions were overruled, and they have appealed to this court, and have assigned errors.

Without elaborating or discussing the various powers conferred on petitioner by its charter, it appears that, among others, it is endowed with authority to develop the—"water power of the rivers and streams of this State, whether in fact navigable, or by law declared navigable, or unnavigable; to manufacture electricity to be used for making electric lights, furnishing motive power, heating houses, electrotyping, telephone purposes, or for any purpose to which electricity is now or may hereafter be applied in any manner or form whatever; and, for this pur-

pose, said company is hereby authorized and empowered and invested with the privilege of constructing, maintaining, and operating, in such rivers and streams of this State, dams, piers, sluiceways, canals, locks, ponds, breakwaters, abutments, and mill sites for manufacturing purposes, upon the following provisions and conditions."

In the petition it is said: "By means of poles and towers, with wires and cables strung thereon, your petitioner proposes to carry and transmit said electricity from the point where the same is to be generated or manufactured to various cities, towns, and communities of the State of Tennessee, to be sold to said cities, towns, and communities and to all the inhabitants, citizens, firms, and corporations thereof who may desire to purchase same, and at uniform and reasonable rates, without discrimination, and under the supervision, regulation, and control of the Railroad and Public Utilities Commission of the State of Tennessee, or such other supervisory authority of the State as may be clothed with the power or jurisdiction over the public service corporations or utilities of this State."

"Petitioner purposes also to sell, furnish, and deliver said electricity to such other public service electric light corporations or other public utilities as are authorized by law to sell, furnish, and distribute electricity to the public for heat, light, or power, or for any other purpose for which electricity is or may be used, to the end that such public service corporations to whom said electricity may be sold or furnished by your petitioner may by their proper means and facilities, or by the proper

means and facilities of your petitioner, distribute and furnish said electricity to all persons, firms, and corporations desiring the same at reasonable and uniform rates, without discrimination, and under the rules, regulations, and requirements of the Railroad and Public Utilities Commission of the State, as aforesaid."

In the petition it is further said: "It is the purpose of your petitioner to perform the functions of a public service corporation as contemplated by its charter and the laws of the land by furnishing electricity to all citizens, firms, corporations, and communities along its lines, who may desire said electricity in quantities sufficient to justify the handling of the same at such particular points or places, or as shall be its duty as a public service corporation to furnish, or as may be required by the Railroad and Public Utilities Commission of the State, or such other supervisory authority as may have jurisdiction over your petitioner as a public service corporation. And at all points or places where said electricity is to be sold or furnished, it will be supplied to all classes of customers without discrimination and at uniform rates, where a similarity of conditions makes it reasonable, possible, or practical to maintain such rates, and as to all said matters it will be subject to the requirements of said Railroad and Public Utilities Commission, as aforesaid."

The defendants resist the right of the petitioner to condemn on the grounds:

(1) It is said that it appears from the pleadings and proof that petitioner does not propose or intend to devote

the lands or rights of way sought to be condemned to a public use.

(2) That it is not the purpose of petitioner to furnish electricity to the public generally.

(3) That it has not the right of eminent domain, because it proposes to lease, or has leased, its line and facilities to another public corporation.

(4) That petitioner is not a *bona-fide* corporation, because the proof shows that it was organized as a mere dummy, to be used in behalf of the Tennessee Power Company and the Knoxville Railway & Light Company, for the purpose of carrying out and aiding an alleged monopoly formed and existing between the Knoxville Railway & Light Company and the Tennessee Power Company, in violation of the anti-trust laws of the State.

(5) That the right of way as located by petitioner is improperly located, the insistence being that it passes in dangerous proximity to the village of Bearden, which has a population of some five hundred or six hundred, and, as located constitutes a continuing nuisance, both public and private.

(6) That petitioner does not own dams, create its own water power, or manufacture its own energy.

(7) That the acts, under which petitioner is chartered and organized, are violative of section 21, article 1, of the State Constitution, because they do not restrict the use of the property authorized to be condemned to a public use alone.

The purpose of the petitioner in seeking condemnation of the lands of the defendants is stated by its chief engineer, Mr. Crumbliss, who is also one of its directors. He states that the line which petitioner desires to construct is from Maryville, in Blount county, Tenn., to Knoxville, in Knox county, Tenn. The line was under construction at the time of the hearing in the court below, and a portion of the work has been completed.

Mr. Crumbliss testified that it is the purpose of the petitioner to distribute and sell electrical energy, and in this connection states that the Tennessee Power Company has a generating plant or system on the Ocoee river, between Chattanooga and Caney Fork river, in Middle Tennessee, and from this system power is distributed over six hundred miles of transmission line to Nashville, Knoxville, Cleveland, Sweetwater, Murfreesboro, Mascot, Lenoir City, Loudon, and other towns; that the Tennessee Power Company does not actually bring its lines within the city of Knoxville, having no franchise for that purpose, but distributes its electricity in Knoxville through the Knoxville Railway & Light Company, the Knoxville Railway & Light Company being a public service corporation, and engaged in the business of selling and furnishing electricity to all persons desiring the same in the city of Knoxville and contiguous territory; that there is an arrangement between the Tennessee Power Company and petitioner for the leasing of its lines to the Tennessee Power Company for the transmission of electricity; that petitioner also has an arrangement with the Tennessee

Power Company for the furnishing of its electricity; that petitioner can serve the public at any point where there is power enough needed to justify the expense that would be necessary to reduce the current, and will serve any community on that line where it can do so at reasonable expense, and where it can furnish proper facilities for that purpose; that there is no restriction on petitioner to serve any community, or any particular person, partnership, or corporation at any point along its line; neither is there any restriction on the Tennessee Power Company to perform said service.

While the petitioner is a separate corporation from the Tennessee Power Company, and keeps its records and books separate from the Tennessee Power Company, it is admitted that it is a subsidiary of the Tennessee Power Company in the sense that the owners of the Tennessee Power Company were promoters of petitioner. The reason for its creation is shown to be on account of financing; but it is insisted that this in no way restricts or embarrasses its right to condemn under its charter.

Mr. Crumbliss further testified that, in furnishing electricity, it is not possible to construct lines and facilities, so as to deliver electric current to every person who may reside along the line, because it requires large outlays of moneys to construct a transforming or reducing station at any point on the line for the purpose of delivering electricity at such point, and in view of these requirements it is the purpose of petitioner, as well as the Tennessee Power Company, to furnish electricity to any customer

or customers, where the necessary construction for that purpose would be justified.

It appears from the testimony of Mr. C. H. Harvey, president of the Knoxville Railway & Light Company, that that company has a contract with the Tennessee Power Company for the furnishing of electricity in the city of Knoxville, which is distributed throughout the city and vicinity by the Knoxville Railway & Light Company, which is a public service corporation, without discrimination.

Mr. Harvey testified that the arrangement between the petitioner and the Tennessee Power Company for the construction of the line from Maryville to Knoxville is to increase the supply of electricity to meet the growing demand of the city of Knoxville and vicinity.

As to what is a public use within the meaning of the eminent domain laws, this court, in determining this very question in the case of *Power Co. v. Webb,* 123 Tenn., 584, 133 S. W., 1105, held that the supplying of electric current for lighting, heating, and motive power, where all who desire are entitled to demand a supply for such purposes, is, at the present day, a public use.

We do not think it is necessary that every inhabitant of the community shall be benefited by the use which it is proposed to be made of the lands taken in order to constitute a public one.

In Curtis on Electricity, section 66, the rule is stated as follows:

"To constitute a public use of lands, it is not necessary that every inhabitant of the community be benefited by

the use which is proposed to be made thereof. Stating the doctrine more specifically, in the case of an electric company seeking to condemn lands for the purpose of generating and transmitting electricity to the inhabitants of a locality, it is not necessary for a constitutional delegation of the power of eminent domain to such company that every person therein should actually use or be benefited by the electric current. It is sufficient if each member of the community has an equal right to a portion of the current in common with every other member."

In *Rockingham County Light & Power Co.* v. *Hobbs*, 72 N. H., 537, 58 Atl., 49, 66 L. R. A., 585, it was said:

"If the plaintiff is under obligation to supply electricity or electric energy at reasonable rates, and without discrimination, to all corporations, public, *quasi*-public, and private, and to all persons desiring it, who are located within reasonable distances of the plaintiff's lines, so far as the extent and capacity of its works will permit, it appears to have all the characteristics of a *quasi*-public corporation. . . . The delegation of the power of eminent domain to a corporation is not always accompanied with an express imposition of the obligation to serve the public reasonably and equitably. A corporation, by the acceptance and exercise of the power, impliedly undertakes such service respecting the subject for which the power is exercised."

In that case the court further said: "In addition to the plaintiff's duty in this regard, the legislature has power to control the plaintiff in its dealings with the public."

143 Tenn.—28

To the same effect is the rule announced in *Railroad* v.
*Transportation Co.*, 128 Tenn., 283, 285, 160 S. W., 522.
In that case this court said:

"We are of opinion that the fact that only a compara-
tively small number of people will be benefited by the op-
erations of this flume does not deprive the enterprise of
its public nature.

"A public use may be limited to the inhabitants of a
small or restricted locality.    .    .    .

"An enterprise does not lose the character of a public
use because of the fact that its service may be limited by
circumstances to a comparatively small part of the pub-
lic.    .    .    .

"A belt line railroad    .    .    .    has been held by this
court to be a public service corporation, although under
the facts of that case it was apparent that said corpora-
tion could serve directly only a limited portion of the pub-
lic."

In the same case it is further said: "As said in *Ryan*
v. *Terminal Co.*, 102 Tenn., 111, 50 S. W., 744, 45 L. R.
A., 303, anything that will 'enlarge the resources, increase
the industrial energies, promote the productive power of,
or afford increased facilities for, the rapid exchange of
thought or trade, or otherwise answer the growing needs
of the community as such,' may be treated as a public use,
and, as before seen, the fact that the particular com-
munity served is small does not affect the question."

It was also insisted in that case that the Transmission
Company, having gone on the land and appropriated the

same, and constructed and operated its flume, had failed and refused to perform its duty to the public as a public corporation. To this insistence the court replied:

"An effort has been made to show that the defendant flume company has been oblivious of its duties to the public and has conducted its operations almost exclusively in the interest of the Patterson Lumber Company. This is strenuously denied by the defendant. If these charges are true, parties injured can obtain redress by appropriate proceedings. Such misconduct on the part of defendant might furnish grounds for its dissolution at the suit of the State, but it furnishes no ground upon which to maintain the bill herein filed by complainant."

Nor do we think that it is necessary, in order to constitute the use for which the land is taken a public use, that the electricity be furnished directly by the petitioner to the public.

In Curtis on Electricity, section 63, the rule is stated to be that—"If in the end the property is devoted to a public use, the mere agency or instrumentality through which that result is accomplished is a matter of no concern."

In the same work, at section 64, it is said: "If the use of the property to furnish electricity to a railway company is a public use—and such use seems to be the case— by analogy the use of the lands to generate electricity and transmit the same to another electric company which serves the public, is of a public rather than a private nature. In both cases the service of the public is by an in-

tervening agency, but the electric energy is ultimately consumed in a public occupation."

In 10. Am. & Eng. Ency. of Law, p. 1064, the rule is stated as follows:

"The test of whether a use is public or not is the object to be accomplished and not the instrument employed."

To the same effect is the rule stated in Corpus Juris, vol. 20, p. 585. It is there said:

"A corporation organized to generate and furnish electric power may exercise the right of eminent domain, although it does not render service directly to the public, but indirectly, through other persons and corporations."

In the case of *State ex rel. Dominick* v. *Superior Court of King County,* 52 Wash., 196, 100 Pac., 317, 21 L. R. A. (N. S.), 448, the court, in discussing this question, said:

"If in the end the property is devoted to a public use, the mere agency or instrumentality through which that result is accomplished is a matter of no concern. Thus a railroad, which has leased its road and equipment, may still exercise the right of eminent domain, because the property is devoted to a public use through its lessees."

In the case of *Calor Oil & Gas Co.* v. *Franzell,* 128 Ky., 715, 109 S. W., 328, 33 Ky. Law Rep., 98, 36 L. R. A. (N. S.), 456, it appeared that the Calor Oil & Gas Company was caused to be incorporated by the Louisville Gas Company for the purpose of conducting the oil of the Calor Gas & Oil Company from its oil fields into the city of Louisville, there to be sold exclusively by the Louisville Gas Company. The right to condemn a pipe line for this

purpose was questioned on the ground that it was not a public use, in that the Calor Oil & Gas Company was a mere dummy of the Louisville Gas Company, in whose interest it was organized; the Louisville Gas Company owning all, or practically all of the stock of the Calor Oil & Gas Company. In discussing the petitioner's right to condemn, the court said:

"Nor is it material that the appellant (Calor Oil & Gas Company) proposes to sell all of its gas to the Louisville Gas Company, and in that way distribute it to the citizens of Louisville."

Nor do we think that the fact that petitioner has leased its property to the Tennessee Power Company is a valid defense to its right to condemn. The leasing of this property to the Tennessee Power Company was authorized by the statute. Shannon's Code, section 2043.

In the case of *State ex rel. Trimble* v. *King County Superior Court*, 31 Wash., 445, 72 Pac., 89, 66 L. R. A., 897, it was held that a railroad company was not deprived of the right to exercise the power of eminent domain by the fact that it had no rolling stock of its own, and its right of way was leased to another company. In that case the court said:

"And if it be true that said company has leased its railroad to the Great Northern Company, or any other company or companies, or agreed to do so, it is not thereby precluded from condemning and appropriating private property, for a public use, which may be necessary for its tracks, side tracks, depots," etc.

To the same effect is the rule announced in *New York,*

*L. & W. R. Co.* v. *Union Steamboat Co.*, 99 N. Y., 12, 1 N. E., 27, in *C. & W. I. R. Co.* v. *I. C. R. Co.*, 113 Ill., 156, in *Crolly* v. *Minneapolis & St. Louis Ry. Co.*, 30 Minn., 541, 16 N. W., 422, and in *Snyder* v. *B. & O. Railroad Co.*, 210 Pa., 500, 60 Atl., 151.

Nor do we think it is material that the petitioner may be allied with or promoted by the Tennessee Power Company, or that it may intend to supply electricity to the Knoxville Railway & Light Company. We think the rule is well established by the great weight of authority that, if the use for which the property is proposed to be applied is, in fact and in law, a public use, it is immaterial whether it is promoted by other corporations in whole or in part. This does not affect the right of condemnation, and it cannot be set up as a defense that a corporation seeking to condemn is owned or controlled by some other corporation, which will be the chief beneficiary of the condemnation proceedings.

In Lewis on Eminent Domain, vol. 2, p. 1070, it is said:

"If the petition or instrument of appropriation shows that the property is wanted for a purpose which is a public use within the Constitution, and for a purpose within the statute conferring authority, it would seem the better rule that any inquiry into the secret purpose or intentions of the appropriator should be precluded."

The same author, at page 1050, further says: "It is no objection that the organization of the plaintiff corporation was promoted or procured by another corporation, or its stockholders, which is especially interested in the enterprise for which the plaintiff was formed, and which

could not condemn property in, furtherance of such enterprise, and such matters cannot be set up in answer to the plaintiff's petition to condemn."

To the same effect is the rule announced in 2 Nichols on Eminent Domain, section 413; 10 R. C. L., pp. 211, 212; 20 Corpus Juris, p. 914; *Railroad Co.* v. *Cable Co.*, 111 Fed., 842, 49 C. C. A., 663; *Postal Telegraph Co.* v. *Railroad Co.*, 23 Utah, 474, 65 Pac., 735, 90 Am. St. Rep., 705; and *Oliver* v. *Bridge Co.*, 197 Pa., 344, 47 Atl., 230.

To the same effect is the rule stated in our own cases of *Railroad* v. *Railway,* 116 Tenn., 504, 95 S. W., 1019 and *Lea* v. *L. & N. R. Co. et al.,* 135 Tenn., 560, 188 S. W., 215

Nor do we think that anti-trust laws have any application to the petitioner's right to condemn.

In *Railroad* v. *Railway, supra,* this court held that this question could not be raised collaterally.

In 2 Nichols on Eminent Domain, 1088, it is said:

"It is universally held that, when the power of eminent domain has been conferred upon a corporation duly formed, its right to exercise the power will not be defeated simply because the corporation has done, or omitted, some act which may be a cause of forfeiture of its rights and franchises."

In answer to the fifth ground of defense offered by the defendants, to the effect that the right of way proposed to be condemned by the petitioner is improperly located, it is only necessary to say that it has been ruled with unbroken unanimity in this State that the right of location rests with the condemning party. *Railroad* v. *Railway,*

*supra; Railway* v. *Campbell,* 109 Tenn., 655, 73 S. W., 112; *Railway* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 45 L. R. A. (N. S.), 266, Ann. Cas., 1913E, 195; *Railroad* v. *Union City,* 137 Tenn., 500, 194 S. W., 572; *Gamble* v. *Paine,* 141 Tenn., 551, 213 S. W., 419; *Western Union Telegraph Co.* v. *Railroad,* 133 Tenn., 710, 182 S. W., 254.

In *Railroad* v. *Railway, supra,* the court quoted from 2 Lewis on Eminent Domain, p. 1068, as follows:

"If the contention were well founded, the result would be that the plaintiff could not condemn any land, for every other landowner would likewise have the same right to object to his land being condemned."

It appears from the testimony of Mr. Crumbliss, the engineer, that he has located the right of way, which it is proposed to condemn, over lands that are less susceptible of improvement, and along the edges of creeks and over unused lands, so as to do as little damage as possible. The engineer further testified that the line proposed to be located does not run near enough to any property to offer the least danger from electricity. He further shows that the Tennessee Power Company's line passes through the suburb of Whittle Springs, a more populous community than Bearden.

The rule is clearly stated in the case of *Railroad* v. *Memphis, supra,* as follows:

"But where the taking is for public use, the only remaining restriction on the sovereign power is to pay the fair and reasonable value of the property taken, generally denominated 'just compensation.' . . .

"But all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it, as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take. This power would be a vain and empty thing, if the owner could contest the advisibility of taking his property rather than his neighbor's, or if he could interpose as a defense to the taking that other property could be found which would suit the public purposes better, or that he, the owner, was of opinion and could prove that the public needed more or less than the quantity proposed to be taken. The power to take would be of small value, if the thing to be taken, in its quantity, quality, and locality, could be determined by another and adverse interest. The authorities seem to be in harmony."

Now, answering the defendants' contention to the effect that petitioner does not own its own dams, create its own water power, or manufacture its own electric energy, and therefore has no right to condemn, we are of the opinion that it is not necessary for petitioner, in order to exercise the right of eminent domain, to own its own generative plant.

In Curtis on Electricity, section 104, it is stated that—

"Electricity is property, and may be the subject of sale and delivery. An electric company may purchase its

tomers is a public use, for which condemnation may be or transmission lines in order to get the current to its cus- current from another company, and the use of property authorized."

Nor do we think that the acts under which petitioner is chartered are unconstitutional, because the use to which the property is to be appropriated is not solely for a public use, but that it has certain private features. This question was expressly ruled against the contention of defendants in the case of *Power Co.* v. *Webb, supra,* and *Noell* v. *Power Co.,* 130 Tenn., 245, 169 S. W., 1169. In those cases the same contention was urged against the constitutionality of the act as is now urged by defendants in the present case; the court holding the act constitutional:

It is also insisted that the court should have sustained the defendants' objection to certain questions propounded by petitioner's counsel to the witness Crumbliss in his examination in chief. It is insisted that these questions called for the mere conclusions of the witness.

We do not think the objection was well grounded, and the same was properly overruled by the trial court. We think the questions called for information that was properly within the knowledge of the witness.

We find no error in the judgment of the court below, and it is affirmed, with costs.