An order in accordance herewith may be submitted.

**KINGSPORT UTILITIES, Inc.,**

v.

**Bonnie STEADMAN and Maxie Steadman.**

**No. 1043.**

United States District Court
E. D. Tennessee, Northeastern Division.

March 16, 1956.

Penn, Hunter, Smith & Davis, Edwin O. Norris, Kingsport, Tenn., for plaintiff.

Clifford E. Sanders, Jackson C. Raulston, Frank K. Moore, Kingsport, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This is an action to acquire by condemnation a tract of land in fee simple for use as a transformer station location and containing 3.302 acres; also, rights-of-way for electric line easements over adjacent lands on each side of the substation tract.

The landowners, defendants herein, have questioned the legality of the attempted taking on the ground that the substation site and rights-of-way have not been located where they will do the least damage.

Further obstacles are raised in that defendants leave in a state of suspension what they intend to do about requiring a jury of view or waiving the same and having the damages assessed by a regular jury, also whether the legality of the taking should be determined by a jury or whether that question should be waived in exchange for waivers on the other side.

In this situation, it would seem that the Court should apply the law.

■ Legality of the taking is not a jury question, although the statute is somewhat confusing on the point. Section 65–2201 of the new Tennessee Code, which is substantially the same as sec. 3167 of the old Code, so far as here pertinent, contains the following:

"Every corporation organized under the laws of any state of the United States and authorized to construct, own, and operate gas or electric plants or both for the purpose of furnishing gas or electricity * * * is empowered to condemn * * * such lands and interests in and by whomsoever owned as may be necessary or advisable * * * in the exercise of its charter powers, such lands and interests in lands as may be necessary or advisable for establishing and maintaining its * * * transmission lines and other works, the rights-of-way for lines of poles, towers, wires, and transmission lines through any and all lands between its * * * power houses and other works * * *; and every such corporation may at any time enter thereon and repair same or when deemed necessary or advisable may place additional equipment, appliances or appurtenances; provided that such electric wires, conductors, conduits, ditches, canals, flumes, pipelines and transmission lines shall be placed in such manner as to do as little injury to the property of private persons as possible; and provided further that every such corporation shall make compensation to the owners of the real estate condemned or taken through which its electric wires * * * and transmission lines may be placed. If the owner and the corporation cannot agree upon the amount of compensation which should be paid, the taking shall proceed and the damages or compensation to be paid shall be assessed in the manner provided by chapter 14 of title 23 of this Code."

The quoted provisions are based upon the Acts of 1925, as modified by the Code of 1932.

■ The Code makes no provision for judicial determination of what "may be necessary or advisable" with respect to what land or interest in land is condemned. Nor does it provide for creation of a commission to determine where substations and power lines shall be located. The directive that "transmission lines shall be placed in such manner as to do as little injury to the property of private persons as possible" does not apply to substation sites, but only to transmission facilities. Here again no provision is made for third-party or judicial supervision of transmission facility location.

From a practical viewpoint, the directive as to placement of transmission lines would have a cross-country application and could not be confined in its application to one individual's property. A location that is made with a view to

lessening damage to one person's property could very well result in greater injury to his neighbor's property.

Although the decision pre-dates the Acts of 1925, Webb v. Knox Co. Transmission Co., 143 Tenn. 423, at pages 439–441, 225 S.W. 1046, at page 1050, contains the following pertinent language:

"In answer to the fifth ground of defense offered by the defendants, to the effect that the right of way proposed to be condemned by the petitioner is improperly located, it is only necessary to say that it has been ruled with unbroken unanimity in this state that the right of location rests with the condemning party. [Memphis & State Line] Railroad [Co.] v. [Union] Railway, supra [116 Tenn. 504, 95 S.W. 1019].

"In Memphis & State Line Railroad Co. v. Union Railway, supra, the court quoted from 2 Lewis on Eminent Domain, p. 1068, as follows:

" 'If the contention were well founded, the result would be that the plaintiff could not condemn any land, for every other landowner would likewise have the same right to object to his land being condemned.' * * *

"The rule is clearly stated in the case of [Southern] Ry. v. Memphis, supra [126 Tenn. 267, 148 S.W. 662, 41 L.R.A.,N.S., 828], as follows:

" 'But, where the taking is for public use, the only remaining restriction on the sovereign power is to pay the fair and reasonable value of the property taken, generally denominated "just compensation." * * *

" 'But all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it, as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take. This power would be a vain and empty thing, if the owner could contest the advisability of taking his property rather than his neighbor's, or if he could interpose as a defense to the taking that other property could be found which would suit the public purposes better, or that he, the owner, was of opinion and could prove that the public needed more or less than the quantity proposed to be taken. The power to take would be of small value, if the thing to be taken, in its quantity, quality, and locality, could be determined by another and adverse interest. The authorities seem to be in harmony.' "

In the federal cases the word "administrative" appears instead of "political," but the meaning obviously is intended to be the same. The rule expressed in the foregoing quotations is the same as that applied by the federal courts where the taking is by a federal agency or by the federal government. "Quality, quantity and locality" are administrative and not judicial questions. United States ex rel. T. V. A. v. Dugger, D.C., 89 F.Supp. 877.

■ From the foregoing, it would seem clear enough that the legality of the taking is not a judicial or a jury question.

As the matter of public use is not in issue, the only question to be decided by judicial processes is that of just compensation.

Counsel will prepare an order in conformity with the views herein expressed and present to the Court.

Counsel will also prepare writ of inquiry of damages addressed to the United States Marshal for the Eastern Dis-

trict of Tennessee, commanding him to summon a jury to inquire and assess the damages in accordance with Chapter 14, Title 23, Sec. 23–1407 of the new Code and also present same to this Court for signature.